EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Fernando Vélez Rosario<br><br>Recurrido<br><br><br>v.<br><br><br>Carmen I. Class Sánchez<br><br>Peticionaria | Certiorari<br><br>2017 TSPR 154<br><br>198 ____ |

Número del Caso: CC-2015-600


Fecha: 10 de agosto de 2017


Tribunal de Apelaciones:

    Región Judicial de Bayamón


Abogados de la parte peticionaria:

    Lcda. Luz de Borinquen Dávila Rivera
    Lcdo. Luis Meléndez Albizu


Abogados de la parte recurrida:

    Lcda. Julia González Del Valle
    Lcda. Kendys Pimentel Solo


Materia: Sentencia del Tribunal con Opinión disidente.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Fernando Vélez Rosario

    Recurrido

       v.                     CC-2015-0600

Carmen I. Class Sánchez

    Peticionaria

SENTENCIA

En San Juan, Puerto Rico, a 10 de agosto de 2017.

El Tribunal de Primera Instancia denegó una solicitud para enmendar las Planillas de Información Personal y Económica (PIPE), luego de que uno de los alimentantes aceptó capacidad económica. El Tribunal de Apelaciones se negó a expedir un auto de <u>certiorari</u> para revisar la actuación del foro primario. Ya que consideramos que el foro apelativo intermedio realizó un ejercicio valido de su discreción, confirmamos el dictamen recurrido.

I

El 13 de marzo de 2008, la Sra. Carmen Class Sánchez presentó una petición de alimentos en contra

del Sr. Fernando Vélez Rosario, en beneficio de su hija menor de edad. Subsiguientemente, la señora Class Sánchez presentó una Planilla de Información Personal y Económica, en la que detalló los gastos de la menor. Por su parte, el señor Vélez Rosario presentó una planilla informativa, en la cual indicó que su salario neto ascendía a $4,162. Evaluados los documentos presentados por las partes, la Examinadora de Pensiones Alimentarias recomendó una pensión alimentaria provisional de $1,434 mensuales, que el señor Vélez Rosario pagaría a través de la Administración para el Sustento de Menores (ASUME), a partir del 1 de abril de 2008. El tribunal acogió la recomendación de la examinadora y estableció la pensión alimentaria provisional sugerida.

La pensión provisional se modificó posteriormente a $1,070 mensual, debido a los descuentos que ordena la ley por pago de contribución sobre ingresos y seguro social. Tras varias incidencias, la vista para establecer la pensión alimentaria final se pautó para mayo de 2009.

Durante la vista, la señora Class Sánchez indicó que no estaba preparada y solicitó realizar descubrimiento de prueba con relación a los ingresos del señor Vélez Rosario. Este asunto fue referido al Tribunal de Primera Instancia, el cual determinó que la etapa de descubrimiento de prueba había culminado.

El 12 de agosto de 2009, el Tribunal de Primera Instancia dictó sentencia de divorcio en el caso Fernando

<u>Vélez Rosario v. Carmen I. Class Sánchez</u>, D DI2008-2721. Así, consolidó el presente caso con el de divorcio.

El 4 de septiembre de 2012, la señora Class Sánchez solicitó que se autorizara un nuevo descubrimiento de prueba. Tras varios incidentes procesales, el 20 de marzo de 2014, se celebró una vista ante la examinadora, en la que el señor Vélez Rosario admitió que tenía capacidad económica para sufragar los gastos de su hija menor de edad. Las partes informaron que no lograron un acuerdo por diferencias en torno a cómo debía retrotraerse el computo de la pensión alimentaria a ser fijada. La señora Class Sánchez sostuvo que el acuerdo sobre la cuantía de la pensión debía computarse desde la fecha de la petición de alimentos, el 13 de marzo de 2008. Sin embargo, el señor Vélez Rosario se opuso. Adujo que, al asumir capacidad económica para sufragar los gastos de la menor, los cálculos debían considerar los gastos informados en las planillas informativas que presentó la alimentista. El señor Vélez Rosario se opuso a que se realizara un cómputo a base de unos gastos de la planilla informativa del 2013, para retrotraerlos al año 2008. Por ello, argumentó que los cálculos debían hacerse por periodos, conforme a las planillas informativas ya presentadas. En vista de ello, se pautó la vista para una fecha posterior.

Ante la admisión de capacidad económica del señor Vélez Rosario, la señora Class Sánchez presentó en enero de 2015 las planillas informativas enmendadas,

correspondientes a las previamente presentadas el 8 de abril de 2008, 21 de mayo de 2009, y 2 de diciembre de 2013. Además, presentó una nueva planilla informativa en relación a los gastos del 2015.

Tras escuchar las argumentaciones de las partes en cuanto a la solicitud de enmendar las planillas informativas, el tribunal denegó la solicitud de la alimentista. Así, el 26 de febrero de 2015 emitió una Resolución en la cual expresó lo siguiente:

> [La] determinación de este Tribunal, está basada en gran parte en la posición de la parte demandada [en el caso de divorcio, la Sra. Class Sánchez] de traer nueva evidencia sin base o fundamentos alguno, sometida solamente basado en el mejor recuerdo de la parte demandada. Esta posición sin ninguna evidencia años después que se presentaran las PIPE más cercanas en tiempo y espacio al momento actual de los alegados gastos, no proceden [sic] en derecho.

> Los alegados gastos tienen que estar fundamentados y evidenciados. Un mero recuerdo no puede dar base a enmendar las PIPE que en su momento fueron juramentadas por ciertas. Cabe señalar que la parte demandada ha tenido representación legal a través del proceso, y debe de saber o haber sido informada de las posibles consecuencias de proveer bajo juramento información conflictiva.

> De más está decir, como fundamento adicional para no permitir la presentación de documentos y evidencia nueva, está el propio historial del caso, y las actuaciones de las partes, específicamente la parte demandada, en continuar atrasando el caso una vez más.

> Por eso, este Tribunal se reafirma en su determinación, y ordena a la Examinadora de Pensiones a ver la vista de fijación de pensión utilizando las PIPE originales, y la evidencia presentada hasta el mes de octubre de 2014, con la excepción de los gastos universitarios incurridos, si alguno.

Resolución emitida en el caso <u>Carmen I. Class Sánchez v. Fernando Vélez Rosario</u>, D AL2008-0492, consolidado con <u>Fernando Vélez Rosario v. Carmen I. Class Sánchez</u>, D DI2008-2721.

Inconforme, el 24 de marzo de 2015, la señora Class Sánchez presentó una petición de <u>certiorari</u> y una moción en auxilio de jurisdicción ante el Tribunal de Apelaciones. Alegó que el Tribunal de Primera Instancia erró al rehusarse a dejar sin efecto la determinación de la examinadora. Además, arguyó que el foro primario debió permitir tanto las planillas informativas enmendadas, como la planilla informativa de 2015. No obstante, el foro apelativo intermedio denegó expedir el auto.

El Tribunal de Apelaciones fundamentó su determinación en que no estaba presente ninguno de los criterios que establece la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, para expedir el auto de <u>certiorari</u>. Asimismo, expresó que la deferencia al juicio y discreción del foro primario está cimentada en que los foros apelativos no pueden pretender disponer ni manejar el trámite ordinario de los casos que se ventilan ante el Tribunal de Primera Instancia, pues no existe duda de que ese foro es el que conoce mejor las particularidades del caso y el que está en mejor posición para tomar las medidas que permitan el adecuado curso hacia su disposición.

Por otra parte, el foro apelativo intermedio puntualizó que el Tribunal de Primera Instancia debe fijar

la pensión alimentaria permanente sin mayor dilación, pues este caso no admite mayores retrasos ni transferencias de vista. Así, indicó que luego de que el tribunal determine la pensión final, ya sea por periodos, o a su mejor juicio, podrá calcularse la deuda por la aplicación retroactiva de la pensión alimentaria.

Consecuentemente, la señora Class Sánchez acudió ante nos mediante una petición de certiorari. Arguyó que procedía adjudicar una pensión alimentaria a base de los gastos actuales de la menor, la cual debía aplicarse retroactivamente al 2008, o en la alternativa, de imponerse una pensión alimentaria por periodos, debían considerarse las enmiendas a las planillas presentadas para que estas reflejen los gastos razonables de la menor.

II

La señora Class Sánchez alegó ante el Tribunal de Apelaciones que no fue hasta que el señor Vélez Rosario admitió capacidad económica que resultó necesario detallar con precisión los gastos de la menor. Sostuvo que las planillas informativas originales fueron presentadas para cumplir con el régimen legal establecido por las Guías Mandatorias, y no para cumplir con el criterio de 100% de gastos razonables reconocido en Santiago, Maisonet v. Maisonet Correa, 187 DPR 550 (2012). Asimismo, arguyó que las enmiendas presentadas obedecen al deber expreso, afirmativo y continuo de actualizar, corregir o enmendar la prueba, que establece la Regla 23.1 de Procedimiento

Civil, 32 LPRA Ap. V. Por consiguiente, argumentó que el Tribunal de Primera Instancia debió permitir las enmiendas a las planillas informativas de 2008, 2009 y 2013, así como la planilla informativa correspondiente al 2015.

El descubrimiento de prueba juega un papel fundamental en el proceso de establecer las pensiones alimentarias de menores, ya que, para poderlas fijar, es indispensable conocer la realidad económica del alimentante, así como la situación del alimentista. Santiago, Maisonet v. Maisonet Correa, supra, pág. 564; Ferrer v. González, 162 DPR 172, 178 (2004); Chévere v. Levis, 150 DPR 525 (2000). De hecho, el Art. 16 de la Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, conocida como la "Ley para el Sustento de Menores", 8 LPRA sec. 515, establece como mandatorio el descubrimiento de información de ambos, el alimentista y el alimentante.

Las Reglas de Procedimiento Civil establecen varios mecanismos para permitir a las partes "descubrir, obtener o perpetuar la prueba necesaria para sustanciar sus alegaciones en el acto del juicio". R. Hernández Colón, Derecho procesal civil, San Juan, Lexisnexis de PR, 2010, Sec. 2801, pág. 293. Los tribunales de instancia tienen amplia discreción para regular el ámbito del descubrimiento, pues es su obligación garantizar una solución justa, rápida y económica del caso, sin ventajas para ninguna de las partes. Rivera v. Tribunal Superior, 99 DPR 276, 278 (1970); Martínez Rivera v. Tribunal

Superior, 85 DPR 3 (1962). De este modo, se elude la posibilidad de que cualquiera de las partes abuse de la utilización de los mecanismos de descubrimiento de prueba.

En el ejercicio de esta facultad, el Tribunal de Primera Instancia denegó la solicitud de la señora Class Sánchez para enmendar las planillas informativas de 2008, 2009 y 2013 y, admitir una planilla informativa nueva correspondiente al 2015, presentada luego de que el señor Vélez Rosario admitiera capacidad económica. Ahora bien, nos corresponde resolver si el Tribunal de Apelaciones, al negarse a revisar esta actuación del foro primario, abusó de su discreción y resulta meritoria nuestra intervención.

III

La discreción es el instrumento más poderoso que tienen los jueces en su misión de hacer justicia. Pueblo v. Sánchez González, 90 DPR 197, 200 (1964). En vista de ello, la tarea de determinar cuándo un tribunal ha abusado de su discreción no es fácil. Hemos resuelto que el adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad. Pueblo v. Dávila Delgado, 143 DPR 157, 171 esc. 15 (1997); Pueblo v. Ortega Santiago, 125 DPR 203, 211 (1990); Pueblo v. Sánchez González, supra.

A diferencia de la apelación de una sentencia final, el auto de certiorari es un recurso procesal de carácter discrecional. Como ocurre en todos los casos en que se confiere discreción judicial, esta no se da en un vacío ni

en ausencia de unos parámetros. En el caso de un recurso de certiorari ante el Tribunal de Apelaciones, esa discreción se encuentra delimitada por la Regla 52.1 de Procedimiento Civil de 2009, 32 LPRA Ap. V, y el Reglamento del Tribunal de Apelaciones.

Por su parte, el segundo párrafo de la Regla 52.1 de Procedimiento Civil, supra, dispone lo siguiente:

> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

La Regla 52.1 de Procedimiento Civil de 2009, íd., corresponde, en parte, a la Regla 52.1 de Procedimiento Civil de 1979, 32 LPRA Ap. III. Informe de Reglas de Procedimiento Civil. Secretariado de la Conferencia Judicial y Notarial, marzo de 2008, pág. 598. Esta fue objeto de cambios fundamentales dirigidos a evitar la revisión judicial de aquellas órdenes o resoluciones que dilataban innecesariamente el proceso pues pueden esperar a ser revisadas una vez culminado el mismo, uniendo su

revisión al recurso de apelación. R. Hernández Colón, Derecho procesal civil, op. cit., Sec. 5515a, pág. 457. Otro de los cambios que se incorporó en la Regla 52.1 de Procedimiento Civil de 2009, supra, es que cuando el Tribunal de Apelaciones deniegue la expedición del auto de certiorari, no tiene la obligación de fundamentar su decisión.

Por otro lado, la Regla 40 del Reglamento del Tribunal de Apelaciones, supra, detalla los criterios que se deben tomar en cuenta para ejercer esa facultad discrecional. Estos criterios son los siguientes: (A) si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho; (B) si la situación de hechos planteada es la más indicada para el análisis del problema; (C) si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia; (D) si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados; (E) si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración; (F) si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio y, (G) si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Así, la denegatoria de expedir el auto de _certiorari_ no constituye una adjudicación en los méritos, y responde al ejercicio de la facultad discrecional del Tribunal de Apelaciones para no intervenir a destiempo con el trámite pautado por el foro de primera instancia, evitando que se dilate innecesariamente la resolución final del pleito. Véase, _Núñez Borges v. Pauneto Rivera_, 130 DPR 749, 755-756 (1992).

En este caso, el Tribunal de Primera Instancia determinó que la peticionaria no proveyó una razón que justificara las enmiendas a las planillas informativas, lo cual milita en contra de la certificación que se hace en estas. Por otra parte, en su dictamen, puntualizó el hecho de que la peticionaria propició en múltiples ocasiones el atraso del procedimiento dirigido a fijar la pensión permanente.

En atención a ello, el Tribunal de Apelaciones determinó que no estaba presente ninguno de los criterios que establece la Regla 40 del Reglamento del Tribunal de Apelaciones, _supra_. Así, denegó expedir el recurso para no intervenir a destiempo con el proceso ante el Tribunal de Primera Instancia, pues lo contrario postergaría aún más la solución final del pleito.

En este caso han transcurrido nueve años desde que se presentó la petición original de alimentos y, a pesar de contar con la aceptación de capacidad de parte del padre alimentante, aún no se ha fijado una pensión permanente.

Por eso, es forzoso concluir que el Tribunal de Apelaciones realizó un ejercicio de discreción válido. Ahora, el Tribunal de Primera Instancia debe fijar la pensión alimentaria permanente sin mayor dilación. Este asunto no soporta más retrasos.

De todos modos, la parte afectada por la denegatoria de expedir el auto de certiorari podrá revisar el dictamen final, cuando se resuelva la causa de acción por el foro sentenciador. Negrón v. Srio. de Justicia, 154 DPR 79, 93 (2001); Bco. Popular de P.R. v. Mun. de Aguadilla, 144 DPR 651 (1997). Por lo tanto, en su momento, cuando el foro primario fije una pensión permanente y si la señora Class Sánchez recurre de ese dictamen final, el Tribunal de Apelaciones estará en posición de determinar si la falta de enmienda a las planillas informativas, dejó descubierta alguna necesidad evidenciada de la menor alimentista. Igualmente, tendrá la oportunidad de revisar la corrección del efecto retroactivo que fije el Tribunal de Primera Instancia. Antes de eso, cualquier intervención nuestra tan solo retrasaría la solución del caso. No podemos presumir que el Tribunal de Primera Instancia no va a seguir los parámetros que establece la ley.

Por último, debemos tener presente que, aunque la economía procesal es un principio importante de nuestro ordenamiento procesal, esta no contempla invertir el orden jerárquico para convertirnos en un foro de primera instancia que pauta normas antes de que los foros

revisados hayan resuelto el asunto planteado. Lo que está ante nuestra consideración es si el Tribunal de Apelaciones abusó de su discreción al negarse a expedir el recurso y, en su lugar, esperar a que el Tribunal de Primera Instancia resuelva en su día. Resolvemos que no.

IV

Por los fundamentos antes expuestos, se confirma la resolución del Tribunal de Apelaciones.

Lo acordó y ordena el Tribunal, y lo certifica el Secretario del Tribunal. El Juez Asociado señor Estrella Martínez emitió una Opinión disidente, a la cual se unió el Juez Asociado señor Colón Pérez.


Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Fernando Vélez Rosario

Recurrido

v.                    CC-2015-600        Certiorari

Carmen I. Class Sánchez

Peticionaria

Opinión disidente emitida por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ al cual se une el Juez Asociado SEÑOR COLÓN PÉREZ

San Juan, Puerto Rico, a 10 de agosto de 2017.

Recomendé al Pleno de este Tribunal expedir este caso por considerar que estamos ante unas controversias del Derecho de Familia de gran importancia, no solamente para las partes, sino también para nuestra sociedad. Específicamente, considero que debimos resolver si como parte de los procedimientos de alimentos en beneficio de los menores, procedía enmendar las planillas de información personal presentadas, cuando uno de los alimentantes aceptó capacidad económica durante el trámite correspondiente. A su vez, debimos precisar el efecto de la retroactividad al momento de fijar una pensión alimentaria.

A más de un año y medio, una Mayoría de este Tribunal decide aplazar la solución de tales controversias optando por devolver el caso al foro primario para que fije una pensión alimentaria permanente, para que luego las partes tengan que volver a recurrir con las mismas controversias. Desafortunadamente, con tal proceder, no se fomenta el principio de economía procesal y se mantiene innecesariamente un estado de incertidumbre que no abona al alto interés público del que está revestido el sustento de menores. En consecuencia, no comparto el raciocinio de la Mayoría de este Tribunal, por lo que me veo obligado a disentir.

I

El 13 de marzo de 2008, la Sra. Carmen I. Class Sánchez (señora Class Sánchez o peticionaria) solicitó alimentos en beneficio de su hija menor de edad. En ese mismo año, la señora Class Sánchez presentó una Planilla de Información Personal y Económica (PIPE) en la que detalló los gastos correspondientes de la menor. Por su parte, el Sr. Fernando Vélez Rosario (señor Vélez Rosario o recurrido) presentó su PIPE y detalló su ingreso mensual. Conforme a lo presentado, la Examinadora de Pensiones Alimentarias (EPA) recomendó una pensión provisional de $1,434 mensual a ser pagada a partir de 1 de abril de 2008. Luego, la pensión provisional fue modificada a $1,070 mensual, debido a que al calcularla no se consideraron los descuentos mandatorios por ley por

concepto de contribución sobre ingresos y seguro social. La pensión provisional modificada estaría vigente a partir del 1 de diciembre de 2008.

La vista para establecer la pensión alimentaria final fue fijada para mayo de 2009; sin embargo, la señora Class Sánchez no estaba preparada y solicitó realizar descubrimiento de prueba con relación a los ingresos del señor Vélez Rosario. El asunto fue atendido por el Tribunal de Primera Instancia, el cual determinó que el proceso de descubrimiento de prueba había finalizado.[1]

Posteriormente, en mayo de 2009, la peticionaria presentó otra PIPE. Sin embargo, la pensión final no pudo ser determinada debido a varias incidencias dentro del proceso. En el 2012, la señora Class Sánchez anunció nueva representación legal y otra vez insistió en descubrir prueba. Particularmente, requirió la expedición de varias órdenes a distintas empresas para escudriñar si el señor Vélez Rosario laboraba para éstas. No obstante, en el 2013 las partes nuevamente presentaron sendas planillas informativas.[2] Finalmente, la vista final para alimentos quedó pautada para el 2014.

---

[1] Paralelamente, el Sr. Fernando Vélez Rosario (señor Vélez Rosario) presentó la demanda de divorcio. El caso de alimentos no fue consolidado originalmente con el divorcio. El foro primario decretó el divorcio entre las partes el 12 de agosto de 2009. Eventualmente, el caso de alimentos fue consolidado con la petición de divorcio.

[2] El señor Vélez Rosario insistió en varias ocasiones en que la Sra. Carmen I. Class Sánchez (señora Class

(continúa...)

El día antes de la vista ante la EPA, la señora Class Sánchez informó el resultado negativo de negociaciones con el señor Vélez Rosario, requirió la solicitud de alimentos para incluir terceros demandados y reiteró su solicitud de descubrimiento de prueba en cuanto a la condición económica del padre alimentante.

Durante la vista ante la EPA, el recurrido admitió tener capacidad económica para sufragar los gastos de la hija menor de edad. Empero, hubo controversia con relación a dos aspectos sobre la fijación de la pensión alimentaria. La primera de ellas, en torno a cómo debía retrotraerse el cómputo de la pensión alimentaria a ser fijada. La segunda, si procedía la enmienda de las planillas informativas presentadas por la señora Class Sánchez.

Por su parte, la peticionaria sostuvo que procedía retrotraer la pensión alimentaria, con los gastos y necesidades vigentes de la menor, al momento en que se solicitó originalmente la pensión alimentaria. Por el contrario, el señor Vélez Rosario argumentó que procedía retrotraer la pensión alimentaria al 2008 por periodos, conforme a las planillas informativas presentadas. La EPA avaló el reclamo del recurrido al concluir que tras aceptar capacidad económica, procedía realizar el cómputo de la pensión alimentaria conforme a las necesidades de la

_____

Sánchez) no suministró evidencia para sustentar los gastos informados en la PIPE.

menor para cada periodo. Determinó que la deuda por efecto del retroactivo se discutiría en la vista final de alimentos. Como consecuencia de la aceptación de capacidad económica por el señor Vélez Rosario, la señora Class Sánchez retiró su solicitud de descubrimiento de prueba y de incluir a terceros demandados. Por tanto, la vista para establecer la pensión alimentaria quedó pautada para el 24 de abril de 2014.

Dos días antes de la vista final, la peticionaria solicitó su suspensión, por entender que existía controversia en cuanto a cómo computar la pensión alimentaria, entre otras razones. Para ello, refirió al tribunal lo resuelto por la EPA sobre la retroactividad de la pensión alimentaria por periodos y solicitó al foro de instancia que atendiera su planteamiento de que debía ser computada a base de las necesidades actuales de la menor, retroactivo al 2008. A su vez, planteó que, de establecerse la pensión alimentaria por periodos, procedía enmendar las planillas informativas presentadas, porque éstas no reflejaban todos los gastos razonables de la menor.

Ante ello, el Tribunal de Primera Instancia suspendió la vista y ordenó al señor Vélez Rosario exponer su postura en cuanto a lo expresado por la señora Class Sánchez. Éste cumplió con lo ordenado. Ulteriormente, y luego de examinar las posturas de las partes, el 18 de agosto de 2014, el Tribunal de Primera

Instancia emitió una orden en la que dispuso como sigue: "Enterado. Se refiere a EPA para fijación de pensión final, tomando en cuenta la aceptación de capacidad económica del señor Vélez Rosario. Una vez se establezca, se determinará el retroactivo".[3] Dicha determinación fue reiterada mediante la orden de 28 de agosto de 2014, en la que el foro primario nuevamente dispuso referir el asunto a la EPA para fijación de pensión, según la aceptación de capacidad económica, para luego imponer el retroactivo aplicable.

Eventualmente, la EPA, conforme con lo ordenado por el Tribunal de Primera Instancia, decretó que había que determinar la pensión final, para luego hacer el cálculo del retroactivo. A su vez, dispuso que se debía fijar pensión alimentaria para tres periodos a partir del 2008, conforme a las planillas de información presentadas. Esos periodos comprenderían el 2008-2010, 2011-2013 y desde el 2014 en adelante. El nuevo señalamiento fue pautado para el 22 de enero de 2015.

En el ínterin, la señora Class Sánchez presentó enmiendas a las planillas informativas previamente presentadas.[4] Nuevamente, días antes del señalamiento, y debido a lo expresado por la EPA con relación a

---

[3]Véase Apéndice del recurso de *certiorari,* pág. 332.

[4]La señora Class Sánchez enmendó las planillas presentadas el 8 de abril de 2008, 21 de mayo de 2009 y el 2 de diciembre de 2013. Además, presentó una PIPE adicional el 13 de enero de 2015.

establecer la pensión alimentaria por periodos, la peticionaria solicitó al Tribunal de Primera Instancia que aclarara la forma en la que había de computarse la pensión alimentaria. En síntesis, solicitó que el foro primario adjudicara si la pensión alimentaria sería fijada retroactivamente de acuerdo a los gastos reflejados en la última PIPE presentada, o en la alternativa, le permitiera enmendar las planillas informativas presentadas para que reflejaran los gastos razonables de la menor.

Por su parte, el señor Vélez Rosario se opuso a las enmiendas a las planillas presentadas y reiteró su contención de que la pensión alimentaria debía ser fijada por periodos. Ante esta polémica, no se pudo celebrar la vista final de pensión alimentaria pautada. En su lugar, el foro primario celebró una vista sobre el estado de los procedimientos. Mediante una Resolución emitida el 26 de febrero de 2015, el Tribunal de Primera Instancia determinó que permitiría evidencia de gastos sólo hasta el mes de octubre de 2014 y aquellos posteriores a esa fecha que estuviesen relacionados con los gastos de la menor universitaria, pero no accedería a la solicitud para enmendar las planillas informativas. El foro primario entendió que no procedía la solicitud de la señora Class Sánchez, por entender que carecía de evidencia que justificara los alegados gastos. En consecuencia, dispuso que se "reafirma[ba] en su

determinación, y ordena[ba] a la Examinadora de Pensión a ver la vista de pensión utilizando las PIPE originales, y la evidencia presentada hasta el mes de octubre de 2014, con la excepción de los gastos universitarios incurridos, si alguno".[5]

Inconforme, la peticionaria acudió ante el Tribunal de Apelaciones y cuestionó la disposición del Tribunal de Primera Instancia de rehusar dejar sin efecto la determinación de la EPA para fijar la pensión alimentaria por periodos y, a su vez, impedirle enmendar las planillas informativas presentadas. El foro apelativo intermedio denegó expedir el recurso de *certiorari* presentado, por lo que la señora Class Sánchez acude ante este Tribunal.

En lo que nos atañe, la señora Class Sánchez cuestionó la evaluación que hiciera el foro apelativo intermedio para denegar la expedición del recurso. Arguyó que procedía adjudicar una pensión alimentaria a base de los gastos actuales de la menor, la cual debía aplicarse retroactivamente al 2008 o, en la alternativa, de imponerse una pensión alimentaria por periodos, debían considerarse las enmiendas a las planillas presentadas para que éstas reflejaran los gastos razonables de la menor.

A la luz del marco fáctico que antecede, procedo a exponer el derecho aplicable.

---

[5] Véase Apéndice del recurso de *certiorari,* pág. 700.

## II

Es un deber primordial en la política pública del gobierno velar por la manutención y el bienestar de los hijos menores dependientes. Ese deber está arraigado en el derecho constitucional a la vida consagrado en la Carta de Derechos de la Constitución de Puerto Rico. Art. II, Sec. 10, Const. ELA, LPRA, Tomo 1. Véase, además, Santiago, Maisonet v. Maisonet Correa, 187 DPR 550 (2012); Toro Sotomayor v. Colón Cruz, 176 DPR 528 (2009); Argüello v. Argüello, 155 DPR 62 (2001); Chévere v. Levis, 150 DPR 525 (2000). La jurisprudencia hace eco de esa relevancia al manifestar que los casos relacionados con alimentos están revestidos del más alto interés público, siendo la preocupación principal el bienestar del menor. De León Ramos v. Navarro Acevedo, 195 DPR 157 (2016).

El Código Civil rige lo vinculado al deber de alimentar. En lo que nos concierne, el Art. 142 de ese cuerpo legal establece que los alimentos consisten en lo que resulta indispensable para el sustento, habitación, vestido y asistencia médica, según la posición social de la familia, y la educación e instrucción del alimentista, cuando es menor de edad. 31 LPRA sec. 561. A su vez, el Código Civil dispone que le corresponde a las madres y padres la responsabilidad de alimentar a sus hijos no

emancipados, tenerlos en su compañía y educarlos con arreglo a su fortuna. 31 LPRA sec. 601. También, el Art. 143 del Código Civil impone a los ascendientes y descendientes el compromiso de suministrarse alimentos. 31 LPRA sec. 562(2).

En lo atinente, los padres tienen el encargo natural de proveer alimentos a sus hijos menores de edad. Chévere v. Levis, supra, págs. 534-535; Martínez v. Rivera Hernández, 116 DPR 164, 168 (1985). En consecuencia, hemos expresado que "la obligación de alimentar a los hijos menores es resultado de la relación paterno-filial y surge desde el momento en que la paternidad o maternidad quedan establecidos legalmente", independiente de las circunstancias de su nacimiento y si éstos tienen la patria potestad de sus hijos. Chévere v. Levis, supra, pág. 539.

Ahora bien, el Código Civil precisa el momento en que germina la obligación y su exigibilidad y cuándo procede su abono o pago y cumplimiento. M. Albaladejo y otros, Comentarios al Código Civil y Compilaciones Forales, Ed. Revista de Derecho Privado, Madrid, 1982, T. III, Vol. 2, págs. 46-47. Para ello, el Art. 147 del Código Civil, 31 LPRA sec. 566, en su primer párrafo, dispone lo siguiente:

> La obligación de dar alimentos será exigible desde que los necesitare para subsistir la persona que tuviere derecho a percibirlos; pero

no se abonaran sino desde la fecha en que se interponga la demanda.[6] Íd.

Este artículo encuentra su origen y equivalente en el Art. 148 del Código Civil Español. Inicialmente, este último disponía que la obligación de dar alimentos fuera exigible desde que la persona que tuviere derecho a ellos para subsistir los necesitare, pero no fijaba el momento desde cuándo debían abonarse ante la falta de un reclamo. Tal laguna generó la incertidumbre de si los alimentos serían o no debidos durante mucho tiempo. En consecuencia, se estableció que sólo se adeudaban desde que se reclaman. El fundamento para ello consistió en que "los alimentos responden a una necesidad imperiosa, sin la cual no serían exigibles, y la ley supone que no existe esa necesidad mientras no se reclamen judicialmente". J.M. Manresa y Navarro, Código Civil Español, Madrid, Ed. Reus S.A., T.1, 1956, pág. 837.

En otras palabras, no existe insuficiencia de alimentos hasta que no se entabla un reclamo

---

[6] La Ley Orgánica de la Administración para el Sustento de Menores, Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, 8 LPRA sec. 501 et seq., recoge la política pública de asegurar que se atiendan las necesidades de los hijos menores de edad por aquellos llamados a hacerlo. De León Ramos v. Navarro Acevedo, 195 DPR 157 (2016). Ésta acogió lo dispuesto por el Código Civil al disponer lo siguiente:

Los pagos por concepto de pensiones alimentarias y de solicitudes de aumentos en las mismas serán efectivos desde la fecha en que se presentó la petición de alimentos en el tribunal, y en los casos administrativos desde que se presentó la Solicitud de Servicios de Sustento de Menores ante la Administración. 8 LPRA sec. 518.

judicialmente. Miranda v. Cacho, 67 DPR 515, 517 (1947). Véase, además, Q. Mucius Scaevola, Código Civil Comentado y Concordado Extensamente y Totalmente Revisado y Puesto al día por Francisco Ortega Lorca, Madrid, Instituto Editorial Reus, 1942, T. III, pág. 463. De esta forma, se contempla la demanda de alimentos como el punto inicial de la obligación. En ese marco doctrinal, el Art. 147 del Código Civil, supra, lo que significa es que "la sentencia no declararía la existencia de una obligación anterior al proceso, sino el nacimiento de la deuda en el proceso". J.L. Lacruz Berdejo y otros, Elementos de Derecho Civil: Familia (J. Rams Albesa, ed.), 4ta ed., Madrid, Ed. Dykinson, 2010, Vol. IV, pág. 24. Lo expuesto difiere de la norma general que reconoce el derecho a partir de que recae una sentencia firme, pero esa normativa no aplica a las características peculiares del derecho de alimentos, ya que éstos son efectivos desde que se interpuso su petición. Albaladejo, op cit., pág. 48.

Como señalamos, y en el caso de los hijos, el ejercicio de proveer alimentos corresponde tanto al padre como a la madre alimentante, por lo que -como norma general- éstos se reparten tal obligación en cantidad proporcional al caudal respectivo. 31 LPRA sec. 565. Para establecer la cuantía que procede de alimentos, el Código Civil impone que se considere "los recursos del que los da y a las necesidades del que los recibe, y se reducirán

o aumentarán **en proporción a los recursos del primero y a las necesidades del segundo**". 31 LPRA sec. 565 (énfasis suplido). Santiago, Maisonet v. Maisonet Correa, supra, pág. 561; Llorens Becerra v. Mora Monteserín, 178 DPR 1003, 1016 (2010). Esto responde a uno de los caracteres propios de los alimentos; la proporcionalidad. Scaevola, op cit., pág. 460.

El principio de proporcionalidad que permea la obligación de proveer alimentos aplica tanto al aspecto pasivo de la relación como al sujeto activo de ésta. Albaladejo, op cit., pág. 44. Lo anterior supone una proporción con relación a la cuantía de la pensión alimentaria de quienes están obligados a suplirla de acuerdo a sus respectivos caudales y, a su vez, requiere que esa retribución se ajuste a las necesidades del alimentista. Chévere Mouriño v. Levis Goldstein, 152 DPR 492, 502 (2000); Llorens Becerra v. Mora Monteserín, supra. De esta forma, el criterio de proporcionalidad para determinar en concreto la cuantía de la pensión alimentaria, es el considerado para determinar la existencia de la prestación alimentaria. Por supuesto, ésta responde a una naturaleza variable, en correlación de los bienes de quien presta la pensión alimentaria o el aumento o disminución de las penurias de quien la recibe, por lo que la fijación de la cuantía dependerá del prudente criterio judicial a base de estos supuestos. Llorens Becerra v. Mora Monteserín, supra; Guadalupe Viera

v. Morell, 115 DPR 4, 14 (1983). Véase, además, J. Santos Briz y otros, Tratado de Derecho Civil: Teoría y Práctica, 1ra Ed., Barcelona, Ed. Bosch, 2003, T. V, pág. 378; Albaladejo, op. cit., pág. 45; Manresa, op cit., pág. 831.

En torno a estos principios es que se fundan los aspectos incorporados por la Ley Orgánica de la Administración para el Sustento de Menores, Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, 8 LPRA sec. 501 et seq. (Ley Núm. 5), a los fines de aprobar unas guías mandatorias para fijar la pensión alimentaria justa y razonable. Además, se estableció un proceso para la determinación del ingreso a considerarse al momento de fijar la pensión alimentaria. No obstante, y en lo pertinente, en Chévere v. Levis, supra, expresamos que esa legislación estaba dirigida a aquellas personas que tienen la obligación de alimentar, y que, por alguna razón, se niegan a cumplir con su responsabilidad. Íd., pág. 543.

A tenor con ello, advertimos que cuando un alimentante admite capacidad económica para sufragar la pensión alimentaria que corresponda, "sólo resta que el tribunal determine la suma **justa y razonable** en concepto de pensión alimentaria para los menores". Íd., pág. 545. La adjudicación de la **pensión alimentaria a fijarse se hará a la luz de la evidencia presentada por los menores con relación a sus necesidades**, sin eximir al alimentante de descubrir prueba necesaria para que el tribunal cumpla con el principio de proporcionalidad y fije la pensión de

acuerdo con las necesidades del menor y la condición económica del alimentante. Íd. Igualmente, hemos señalado que la aceptación de capacidad económica puede retirarse. Sin embargo, si ese retiro ocurre antes del término de revisión de una pensión alimentaria, el alimentante que aceptó capacidad económica deberá demostrar justa causa para su retiro. De León Ramos v. Navarro Acevedo, supra. La aceptación de capacidad económica tampoco menoscaba el derecho de esa parte a reclamar que la pensión fue concedida contrario a la prueba o que resulta irrazonable, según las necesidades de los menores. Santiago, Maisonet v. Maisonet Correa, supra, pág. 565.

A la luz de la norma jurídica originada, surgieron una serie de cuestionamientos que conllevaron los pronunciamientos de este Tribunal para moldear el estado de derecho. Eventualmente, en la secuela de Chévere v. Levis, supra, afinamos cuáles son las necesidades de los menores en estos casos donde el alimentante aceptó capacidad económica para suplirlas. Allí, recordamos que lo indispensable para el sustento del menor depende, tanto de las circunstancias de éste como la situación del padre o madre alimentante, incluyendo los medios económicos y estilo de vida de éstos. Chévere Mouriño v. Levis Goldstein, supra, pág. 501. Por tanto, la pensión alimentaria debía considerar "la condición económica, el estilo de vida del alimentante y las peculiares necesidades de los menores incluyendo el estilo de vida al

cual éstos fueron acostumbrados". Íd., pág. 505. Para ello, advertimos que, en el proceso de cuantificar la pensión alimentaria, los tribunales no están limitados a considerar únicamente evidencia directa sobre gastos e ingresos, sino que pueden utilizar evidencia circunstancial que les permita inferir, las necesidades del menor en correlación con la capacidad económica de su alimentante. Íd., pág. 501. Posteriormente, aclaramos que para ello no procede descubrimiento de prueba alguno respecto al estilo de vida del alimentante. Ferrer v. González, 162 DPR 172, 181 (2004).

En virtud de nuestras expresiones, surgió la incertidumbre de cómo fijar la pensión alimentaria en proporción al caudal de la madre y padre alimentante. Tal cuestionamiento respondió a la falta de conocimiento de una de las variables que impedía calcular la pensión alimentaria que correspondía a la madre y padre alimentante. Finalmente, este Tribunal resolvió el asunto al pautar que en los casos donde uno de los alimentantes aceptó capacidad económica no procede aplicar las guías mandatorias de la Ley Núm. 5. Al considerar que la pensión alimentaria tiene que ser fijada para atender las necesidades del menor, resolvimos que "en los casos que el alimentante acepta su capacidad económica, procede que el alimentante pague el 100% de los gastos razonables de los menores." Santiago, Maisonet v. Maisonet Correa, supra, pág. 571. Asimismo, decretamos que "las necesidades

razonables de los menores son aquellas que la parte alimentista logró probar durante la vista evidenciaria", por lo que "considerar la existencia de posibles gastos que no se reclamaron ni se probaron ante la EPA constituye un error de derecho y un abuso de discreción". Íd.

En resumen, en casos donde uno de los alimentantes acepta capacidad económica para suplir las necesidades económicas de sus hijos, sólo resta fijar el monto de la pensión alimentaria considerando exclusivamente las necesidades del menor. De esta manera, le corresponde a la persona custodia exponer cuáles son los gastos razonables de los menores, conforme al estilo de vida del alimentante, para determinar el total de la pensión a pagarse. De León Ramos v. Navarro Acevedo, supra. Así, procede auscultarse los gastos y necesidades razonables del menor, ya sea mediante evidencia directa o circunstancial. Le corresponde a los tribunales salvaguardar el mejor bienestar del menor.

### III

Discutida la normativa jurídica pertinente, procedo a exponer las razones que me llevan a disentir del curso de acción seguido por una Mayoría de este Tribunal en el caso de epígrafe.

### A.

La señora Class Sánchez acude ante nos para que revoquemos al Tribunal de Apelaciones, el cual se negó a expedir el auto certiorari para revisar la determinación

del Tribunal de Primera Instancia. En ésta, el foro primario ordenó la adjudicación de la pensión alimentaria, sin considerar las enmiendas a las planillas de información personal presentadas antes de que el señor Vélez Rosario aceptara capacidad económica.

Por tanto, en este caso nos correspondía determinar si como parte de los procedimientos de alimentos en beneficio de los menores, procedía enmendar las PIPE presentadas, cuando uno de los alimentantes aceptó capacidad económica durante el trámite correspondiente. A su vez, debíamos aclarar el efecto de la retroactividad al momento de fijar una pensión alimentaria.

La normativa expuesta es diáfana en requerir que ante una aceptación de capacidad económica se establezca una pensión alimentaria a base de las necesidades razonables del menor. Ante ello, no existe impedimento para considerar las planillas informativas enmendadas a los fines de auscultar cuáles son los gastos razonables relacionados con el menor. Mucho menos, afecta al alimentante que aceptó capacidad económica, pues tal admisión es una voluntaria que no depende exclusivamente de los dispendios relacionados con el menor, sino de un ejercicio en el que se promueve su bienestar y la agilidad en los procedimientos. De León Ramos v. Navarro Acevedo, supra; Chévere v. Levis, supra. Éste siempre podrá retirarla si cumple con los parámetros establecidos

jurisprudencialmente. <u>De León Ramos v. Navarro Acevedo</u>, *supra.*

Como he expuesto, por imperativo de ley, la pensión alimentaria debe establecerse considerando las necesidades del menor, las cuales serán sufragadas en su totalidad por el alimentante que aceptó capacidad económica. El hecho aislado de que no se pueda presentar evidencia directa acreditativa de los gastos no resulta en un escollo para que una parte pueda presentar prueba, de cualquier otro tipo, que acredite la razonabilidad de lo reclamado. Debemos recordar que los tribunales no están limitados a considerar únicamente evidencia directa a estos efectos. Tampoco las referidas enmiendas constituyen un inconveniente.

Por el contrario, en estos casos, las necesidades de un menor pueden incluir una variedad de gastos que dependerán del estilo de vida de su padre o madre alimentante, incluso aquellas que pudiesen considerarse como frívolas en otras circunstancias. <u>Véase</u> <u>Chévere Mouriño v. Levis Goldstein</u>, supra, pág. 504. **Ello no ocurre de igual manera cuando se fija una pensión alimentaria conforme a las guías mandatorias adoptadas por la Ley Núm. 5. Por tanto, las planillas informativas originales recogen aquellos gastos esenciales relacionados con éste y no necesariamente precisaron otros que pueden ser considerados cuando un padre o madre alimentante acepta capacidad económica.** Le corresponderá al tribunal

ejercer su prudente criterio judicial al momento de determinar si se evidenciaron estos gastos reclamados con prueba directa o circunstancial que permita inferir los mismos. De acuerdo con lo anterior, procedía permitir las enmiendas presentadas para ser auscultadas al momento de establecer la pensión alimentaria que corresponda.

Por último, la señora Class Sánchez sostuvo que el Tribunal de Apelaciones erró al no revocar la determinación del Tribunal de Primera Instancia con relación a cómo procedía establecer el retroactivo de la pensión alimentaria. En síntesis, ésta sostiene que procede que se determine una pensión alimentaria computada a base de los gastos actuales de la menor, pero que se retrotraiga al 2008 cuando presentó la demanda. Razona que el pago de la pensión alimentaria se retrotrae a la fecha de presentación de su acción ante el tribunal. En la alternativa, solicita que, de entender este Tribunal que procede la fijación de la pensión alimentaria por periodos, se establezca la cuantía conforme a las planillas informativas enmendadas. Por su parte, el señor Vélez Rosario no cuestiona que la pensión alimentaria se imponga retroactivamente al momento de la presentación de la demanda, pero expone que en este caso no procede imponer la cuantía determinada desde esa fecha, pues ésta debe fijarse a la luz de las necesidades prevalecientes del menor para los distintos periodos.

La norma jurídica enunciada refleja que la pensión alimentaria se abona desde que ésta se reclama ante el foro correspondiente. Como expliqué, la ley pautó ese momento para que no procediera la imposición de una pensión alimentaria antes de que se solicite. Ahora bien, la ley también impone el principio de proporcionalidad que exige que para la cuantificación de la pensión alimentaria se consideren las necesidades de quien solicita los alimentos. Asimismo, dispone que esa retribución sea de naturaleza variable, pues se reduce o aumenta en correlación a los recursos del alimentante y las penurias del alimentista. De igual forma, se ha establecido que, en los casos donde se acepta capacidad económica, la forma de fijar la pensión alimentaria también considera el principio de proporcionalidad al ordenar que se establezca de acuerdo con las necesidades del menor. La diferencia en estos casos es que el alimentante que aceptó capacidad económica sufraga el 100% de los gastos razonables de éste.

En armonía con lo anterior, ciertamente la pensión alimentaria a ser fijada debe responder a las necesidades del menor, las cuales son de naturaleza variable, por lo que establecer una sola pensión alimentaria retroactiva a siete años no cumple ni refleja la naturaleza variable incorporada en la ley.[7] Mucho menos, respeta el principio

---

[7]Lo contrario, resultaría en un contrasentido. A modo de ejemplo, se impondría de forma retroactiva una pensión

(continúa...)

de proporcionalidad que permea en la obligación alimentaria. Ello pues, no considera las necesidades del menor para los distintos periodos transcurridos.[8] En conclusión, opino que no se cometió el error alegado. En consecuencia, pautado el derecho aplicable, hubiera determinado que la pensión alimentaria debería dictarse considerando las necesidades de la menor por los distintos periodos que fueron informados, luego de auscultar si los gastos informados en las planillas enmendadas proceden o no, conforme a la prueba que en su día se presente.

## B.

No empece a todo lo anterior, una Mayoría de este Tribunal decide aplazar la solución de estas controversias, hasta que el Tribunal de Primera Instancia fije una pensión alimentaria permanente. Más aún, toman el curso de acción desatinado de reconocer que después de fijada la pensión permanente las partes puedan recurrir nuevamente con las mismas controversias y, finalmente, se resuelva "si la falta de enmienda a las planillas informativas, dejó descubierta alguna necesidad evidenciada de la menor alimentista". Sentencia, pág. 12. La Mayoría fundamenta su determinación en que el Tribunal

---

alimentaria que incluya el dispendio de costos universitarios que no fueron incurridos cuando la menor cursaba la escuela elemental y superior, y los cuales no son cónsonos con las necesidades de ésta en determinado momento.

[8]En este sentido, advierto que es la función de los tribunales disponer de estos casos con la premura necesaria para evitar la dilación innecesaria en establecer la pensión final que corresponda.

de Apelaciones actuó en su facultad discrecional para no intervenir a destiempo en el trámite del tribunal primario. La anunciada intención de la Mayoría de no dilatar los procedimientos paradójicamente producirá lo contrario. De haberse pautado el derecho aplicable, según propuesto en este disenso, se abonaría a la certeza y el Tribunal de Primera Instancia contaría con unas guías claras que propenderán a otorgar un remedio adecuado, completo y oportuno en éste y otros casos que repercuten en las vidas de los menores alimentistas. Ante ese cuadro, no puedo más que disentir de tal curso de acción.

Como bien reconoce la Mayoría, el Reglamento del Tribunal de Apelaciones señala los criterios que se deben tomar en cuenta para expedir un auto de *certiorari*. Entre ellos están los siguientes: si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, **son contrarios a derecho**; si la etapa del procedimiento en que se presenta el caso **es la más propicia para su consideración**; si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y **una dilación indeseable** en la solución final del litigio, y si la expedición del auto o de la orden de mostrar causa evita **un fracaso de la justicia**. Estos criterios apuntan inevitablemente a que el Tribunal de Apelaciones debió expedir el auto de *certiorari*.

En ese sentido, la determinación del Tribunal de Primera Instancia, de no permitir las enmiendas a las

PIPE, fue una contraria a derecho, según esbozado anteriormente. Asimismo, revisar en estos momentos la determinación del foro primario es lo más propicio para el caso, ya que postergar tal determinación conllevará que se fije una pensión alimentaria incorrecta. Por el contrario, la actuación de la Mayoría tiene el efecto de dilatar la solución final del litigio. Por tanto, considero que, a la luz de lo dispuesto en la Regla 40, los pasos seguidos constituyen un fracaso de la justicia.

Ante estos hechos procesales, la pregunta obligada es, ¿dónde ha quedado la jurisprudencia y la política pública judicial que fomenta la economía procesal dirigida a otorgar un remedio justo, oportuno y económico? Nótese que la economía procesal permea nuestro ordenamiento y "es un pilar importante dentro de nuestro sistema procesal civil". Dávila, Rivera v. Antilles Shipping, Inc., 147 DPR 483, 494 (1999). Véase, además, Arce Bucetta v. Motorola, 173 DPR 516, 551 (2008). Es decir, "[n]uestro ordenamiento valora la economía y rapidez en la tramitación de los pleitos". J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, 2da ed., Publicaciones JTS, 2011, T. I, pág. 41. Por tanto, "[p]rocede rechazar una interpretación procesal que no armonice con el principio rector que inspira la solución justa, rápida y económica de todo pleito". Íd., pág. 62. Véase, además, Carattini v. Collazo Syst. Analysis Inc., 158 DPR 345, 358 (2003). Es norma reconocida que la

filosofía de nuestro ordenamiento procesal civil se enmarca en la Regla 1, la cual dispone que ese cuerpo de reglas se interpretará de modo que garantice una solución justa, rápida y económica de todo procedimiento. 32 LPRA Ap. V, R. 1. Sobre ese parecer, este Tribunal ha expresado lo siguiente, a saber:

> Al interpretar las Reglas de Procedimiento Civil hay que tener presente, como principio rector, que éstas no tienen vida propia, sólo existen para viabilizar la consecución del derecho sustantivo de las partes. Para poder impartir justicia al resolver los reclamos de las partes, el tribunal debe hacer un balance equitativo entre los intereses en conflicto ejerciendo especial cuidado al interpretar las reglas procesales para que éstas garanticen una solución *justa, rápida y económica* de la controversia. Dávila v. Hosp. San Miguel, Inc., 117 DPR 807, 816 (1986)(*Per curiam*). Véase, además, Isla Verde Rental v. García, 165 DPR 499, 507 (2005).

Asimismo, hemos reiterado que las Reglas están inspiradas en tres valores fundamentales: justicia, rapidez y economía. Por ello, hemos añadido que "se requiere un enfoque integral, pragmático y creativo de nuestro ordenamiento procesal y sustantivo que con voluntad, sinceridad y acción, le dé vida a dichos valores y los convierta en vivencias y realidades cotidianas, atendiendo así las altas expectativas de nuestro contorno social". Neptune Packing Corp. v. Wackenhut Corp., 120 DPR 283, 288 (1988). Véase, además, J.A. Echevarría Vargas, Procedimiento Civil Puertorriqueño, 1ra ed. revisada, 2012, págs. 45-46. Al contrario, los asuntos procesales no deben utilizarse

para derrotar los derechos sustantivos de las partes y deben permitir la adjudicación libre de formalismos y sutilezas puramente legalistas. Ello ya que las Reglas de Procedimiento Civil fueron creadas para agilizar los procedimientos, incluyendo los apelativos. Álvarez v. Rivera, 165 DPR 1, 17 n. 15 (2005); Moa v. ELA, 100 DPR 573, 586 (1972); Lugo Ortiz v. Ferrer, 85 DPR 862, 867 (1962); Sucn. Guerra v. Sánchez, 71 DPR 807, 811 (1950). Ello es así ya que "[n]uestro procedimiento civil se caracteriza por la flexibilidad de procesos y remedios con el fin de hacer justicia". Cuevas Segarra, op. cit., pág. 38. El Dr. Cuevas Segarra menciona que "[l]a mayor eficacia del sistema procesal se adquiere cuando las normas son interpretadas con el propósito de promover el objetivo fundamental de garantizar una solución justa, rápida y económica de las controversias". Íd., pág. 34. En ese sentido, los foros judiciales deben ser diligentes para que las partes reciban un remedio de forma *completa, oportuna y adecuada.* Véase Opinión de conformidad emitida por el Juez Asociado señor Estrella Martínez en Doral et al. v. ELA et al. III, 191 DPR 430 (2014); Opinión de conformidad emitida por el Juez Asociado señor Estrella Martínez en Santana Báez v. Adm. Corrección, 190 DPR 984 (2014); Voto particular de conformidad emitido por el Juez Asociado señor Estrella Martínez en AMPR et als. v. Sist. Retiro Maestros I, 190 DPR 80 (2014); Voto particular emitido por el Juez Asociado señor Estrella

Martínez en Alvarado Pacheco y otros v. ELA, 188 DPR 646 (2013).

Por otra parte, la Mayoría fundamenta su determinación en la discreción de los foros recurridos. No estoy de acuerdo con ese raciocinio. En su lugar, opino que el Tribunal de Apelaciones incidió al no ejercer su discreción de forma razonable y no expedir el auto de *certiorari*. La doctrina de la discreción a los foros inferiores no puede llegar al punto ilógico de tener que abstenernos de intervenir en una controversia que ha sido debidamente presentada ante nuestra consideración. No puede llegar a lo irrazonable de no atender un caso donde el foro primario erró. Y es que, precisamente, por haber "trancurrido nueve años desde que se presentó la petición original de alimentos y, a pesar de contar con la aceptación de capacidad de parte del padre alimentante. . . ., [e]ste asunto no soporta más retrasos". Sentencia, pág. 11. En vista de ello, este Tribunal y el Tribunal de Apelaciones no debían cruzarse de brazos. "Todo lo contrario, se espera que los tribunales atiendan tales reclamos oportuna y diligentemente". Opinión de conformidad emitida por el Juez Asociado señor Estrella Martínez en Doral et al. v. ELA et al. III, supra pág. 432. Ya el caso estaba ante nuestra consideración, sólo bastaba resolver en los méritos para que después el Tribunal de Primera Instancia fijara la pensión permanente de forma correcta. Ello no significa incumplir con las

normas procesales aplicables, sino es darle un enfoque integral y pragmático conforme con la filosofía que inspiraron las Reglas de Procedimiento Civil.

Como he mencionado en otras ocasiones, "la discreción del aludido foro judicial no operaba en el vacío ni de modo arbitrario, por lo que debió utilizarla sabiamente". Íd. La discreción no es ilimitada ni absoluta. Cuevas Segarra, op cit., pág. 47. Asimismo, he advertido lo siguiente, a saber:

> [L]a llamada discreción es una facultad del poder decisorio de los tribunales para escoger entre uno o varios cursos de acción. Empero, es norma reiterada que esa potestad debe ejercerse conforme a lo razonable. Ello, en aras de alcanzar una solución justiciera que responda y produzca un remedio compatible con los intereses involucrados. Doral et al. v. ELA et al. III, supra pág. 432 (cita omitida). Véanse, además, Opinión de conformidad emitida por el Juez Asociado señor Estrella Martínez en García López y otros v. ELA, 185 DPR 390, 394 (2012); Hietel v. PRTC, 182 DPR 451, 459 (2011).

Es por todo lo anterior, que disiento y que concluyo que éste era el momento propicio para atender las controversias señaladas. Una Mayoría de este Tribunal se escuda en el hecho de que "[n]o podemos presumir que el Tribunal de Primera Instancia no va a seguir los parámetros que establece la ley". Sentencia, pág. 12. Justamente, lo que ocurre en este caso es que el foro primario dejó claro con su Resolución que no seguiría los parámetros que establece nuestro ordenamiento legal. Por ello, disiento y afirmo que no hay discreción que respetar cuando un foro primario actúa de forma errónea.

**IV**

Por los fundamentos que anteceden, disiento del curso de acción seguido por una Mayoría de este Tribunal. En su lugar, revocaría al Tribunal de Apelaciones y hubiera permitido las enmiendas presentadas a las planillas informativas para ser auscultadas al momento de establecer la pensión alimentaria que corresponda. Asimismo, hubiera determinado que la pensión alimentaria debe dictarse considerando las necesidades de la menor por los distintos periodos que fueron informados, luego de determinar si proceden los gastos informados en las planillas enmendadas conforme a la prueba que en su día se presente.


                                        Luis F. Estrella Martínez
                                            Juez Asociado