EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: <br><br><br> Carmen del R. Collado Ruiz <br><br><br> | 2016 TSPR 152 <br><br> 195 DPR ____ |

Número del Caso: CP-2013-8

Fecha: 10 de junio de 2016

Abogados de la Querellada:

>       Lcdo. Luis R. Lugo Emanuelli
>       Lcdo. Jesús Bird Serrano

Oficina de la Procuradora General:

>       Lcda. Margarita Mercado Echegaray
>       Procuradora General
>
>       Lcda. Tanaira Padilla Rodríguez
>       Subprocuradora General
>
>       Lcda. Karla Z. Pacheco Álvarez
>       Subprocuradora General
>
>       Lcda. Minnie H. Rodríguez López
>       Procuradora General Auxiliar

 Comisionada Especial:

>       Hon. Eliadís Orsini Zayas

Materia: La suspensión de la **notaría** será efectiva el 5 de julio de 2016, fecha en que se le notificó a la abogada de su suspensión inmediata.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Carmen del R. Collado Ruiz          CP-2013-8

PER CURIAM

En San Juan, Puerto Rico, a 10 de junio de 2016.

Los hechos acaecidos en este caso nos permiten reiterar a los miembros de la profesión jurídica que la práctica de la notaría requiere un alto grado de dedicación y esmero en su ejecución. Cuando no se ejerce la notaría con el empeño requerido, se coloca en riesgo la fe pública, que es la piedra angular de nuestro Derecho notarial. Veamos los antecedentes fácticos que originaron este procedimiento disciplinario.

I

La Lcda. Carmen del R. Collado Ruiz (licenciada o querellada) fue admitida al ejercicio de la abogacía el 6 de noviembre de 1979 y al

de la notaría el 30 de noviembre del mismo año.

El 26 de abril de 1989 la licenciada Collado Ruiz autorizó un contrato privado de compraventa de un solar que no estaba segregado ni inscrito en el Registro de la Propiedad.[1] Compareció como parte vendedora, el matrimonio compuesto por  la Sra. Doris L. Rosa Carrión y, su entonces esposo, el Sr. Emilio Larrión Querrol (señor Larrión); y como parte compradora, la Sra. Aida L. Carbonell Burgos (señora Carbonell Burgos o quejosa). El contrato estaba condicionado a que la letrada realizara varios trámites de segregación y que autorizara las correspondientes escrituras para la posterior inscripción de la propiedad en un término de tres años. Concluidas estas gestiones y transcurrido dicho término, se completaría el pago de la compraventa.

Así las cosas, el 21 de diciembre de 2006, la señora Carbonell Burgos presentó una queja contra la licenciada Collado Ruiz. Alegó que transcurridos más de doce años desde que fue autorizado el contrato privado de compraventa la notaria no había completado la gestión encomendada. Adujo que tuvo que darle seguimiento personalmente hasta que, finalmente, en el año 2003 se otorgó la correspondiente escritura.

Cabe señalar, que la licenciada Collado Ruiz cometió varias infracciones y faltas notariales en varios

---

[1] Según el Informe de la Comisionada Especial, el contenido del documento reflejaba ser una opción de compra aunque se le denominó escritura de contrato de compraventa.

documentos posteriores al otorgamiento del contrato privado; además de las actuaciones erradas en su gestión como notaria durante el trámite para formalizar la compraventa. Veamos.

Según detalla el expediente del caso, la finca objeto del contrato privado de compraventa (solar Núm. 5) procedía de otro predio que pertenecía, a su vez, a otra finca de mayor cabida que no estaba segregada (Finca Núm. 732). Transcurridos seis años desde el otorgamiento del contrato privado de compraventa, el señor Larrión, quien fue uno de los vendedores del bien inmueble en cuestión, falleció.[2] Como parte de las gestiones con la Sucesión Larrión, en noviembre del 2000, la querellada autorizó una escritura de *Protocolización de Poder* en la que se nombró como apoderado a uno de los hijos del causante.

En abril de ese mismo año, la licenciada Collado Ruiz autorizó una escritura de *Ratificación de Segregación de Compraventa* (Primera Escritura) a la cual comparecieron el apoderado de la Sucesión Larrión, la viuda y una hija de ésta, para ratificar la compraventa concretada mediante contrato privado a favor de la quejosa. El bien inmueble objeto del contrato se identificó como "el predio número 5 procedente de otro predio" del cual no se ofrecieron datos registrales, que a su vez procedía de la "Parcela F", inscrita como la "Finca Número 732 de Canóvanas". En esa

---

[2] Cabe señalar, que no fue sino hasta diez años luego del fallecimiento del señor Larrión que la licenciada Collado Ruiz presentó una instancia ante el Registro de la Propiedad con el fin de inscribir la declaratoria de herederos del causante.

escritura la licenciada Collado Ruiz únicamente consignó que los vendedores eran "dueños en pleno dominio" del predio objeto del contrato y que la segregación del solar objeto de la escritura había sido autorizada por la otrora Autoridad de Reglamentos y Permisos (ARPE).[3]

Posteriormente, en junio de 2003, la querellada autorizó una segunda escritura sobre *Ratificación de Segregación y Compraventa* (Segunda Escritura). Al otorgamiento de esa escritura comparecieron los miembros de la Sucesión Larrión, la viuda Doris L. Rosa Carrión y un hermano de ésta. En la aludida escritura, la notaria por primera vez explicó la procedencia de la Finca Núm. 732. En cuanto a ello, señaló que la finca le pertenecía a Crescencio Rosa Pérez (Don Crescencio). Añadió, que ésta había sido objeto de varias segregaciones, ventas y cesiones a favor de los hijos de Don Crescencio, Ángel Enrique y Doris Rosa. Empero, la querellada no figuró información sobre la declaratoria de herederos o documento alguno que acreditara quién o quiénes eran los herederos de Don Crescencio. Tampoco ofreció referencia sobre qué documento acreditaba las transacciones realizadas.[4] Así las cosas, la licenciada Collado Ruiz presentó una acción de declaratoria de herederos ante el Tribunal de Primera

---

[3] Es menester señalar que surge del expediente del caso que en ese momento ARPE aún no había aprobado la segregación.

[4] El 9 de julio de 2004 mediante *Acta de Subsanación* la licenciada Collado Ruiz subsanó la deficiencia en la omisión de nombre, vecindad y sitio del notario autorizante en las escrituras. Posteriormente, el 28 de agosto de 2006, la letrada autorizó una nueva *Acta de Subsanación* para aclarar que en una escritura anterior describió erróneamente el solar 5 vendido a la quejosa ya que ese predio aparecía como "Lote 5" y también como "Lote H-1" en distintos planos.

Instancia para la Sucesión de Don Crescencio. A pesar de que la resolución fue emitida el 1 febrero de 2005, no fue hasta el 28 abril del 2006 que la querellada presentó instancia ante el Registro de la Propiedad para inscribirla.

Conforme a lo anterior, el 7 de marzo de 2009, la Oficina de Inspección de Notarias (ODIN) rindió un Informe sobre la queja presentada. En cuanto a las actuaciones notariales de la licenciada Collado Ruiz, éstas no están en disputa. De hecho, la abogada aceptó que incurrió en las numerosas faltas y deficiencias señaladas en el informe. Además, previo a que este Foro ordenara la presentación de la querella que nos ocupa, la quejosa solicitó el desistimiento de la queja ya que el inmueble finalmente fue inscrito en el Registro de la Propiedad y ésta fue compensada económicamente por la querellada.

No obstante, el 8 de octubre de 2012 ordenamos a la Procuradora General que presentara la querella en virtud de la Regla 14 de nuestro Reglamento.[5] Subsiguientemente, el 22 de febrero de 2013, la Oficina de la Procuradora General presentó la Querella y le imputó a la letrada violaciones a los Cánones 18, 19 y 35 del <u>Código de Ética Profesional</u>;[6] al Art. 56 de la <u>Ley Notarial de Puerto Rico</u> (Ley Notarial);[7] al <u>Reglamento Notarial de Puerto Rico</u>

---

[5] 4 LPRA Ap. XXI-B.
[6] 4 LPRA Ap. IX.
[7] 4 LPRA sec. 2001 <u>et seq</u>.

(Reglamento Notarial);[8] y al Art. 57 de la <u>Ley Hipotecaria y del Registro de la Propiedad</u> (Ley Hipotecaria).[9] Luego de varias prórrogas, la licenciada Collado Ruiz contestó la querella. En esencia, aceptó los hechos y reconoció que no obró con la diligencia requerida en la otorgación de las escrituras públicas descritas. Sin embargo, aclaró que finalmente se logró la inscripción del inmueble en el Registro de la Propiedad a favor de la quejosa.

Después de recibir la contestación de la querellada, designamos a la Lcda. Eliadís Orsini Zayas como Comisionada Especial para que recibiera la prueba y nos rindiera un informe con sus determinaciones de hecho y recomendaciones pertinentes. Las partes sometieron el caso a base de la prueba documental existente en los expedientes del Tribunal. La única prueba testifical consistió en los testimonios de tres testigos de reputación quienes coincidieron en que la letrada goza de una excelente reputación en la comunidad. La Comisionada Especial señaló en su Informe que la letrada aceptó las faltas imputadas.[10] Por ello, nos recomendó que sancionáramos a la querellada limitándole el ejercicio de la notaría por un año, permitiéndole autorizar únicamente testimonios y declaraciones de autenticidad. Tanto la Procuradora General como la querellada tuvieron la

---

[8] 4 LPRA Ap. XXIV.
[9] 30 LPRA sec. X.
[10] La única imputación que la querellada no aceptó fue la violación al Art. 56 de la Ley Notarial, <u>supra</u>. Ello, porque el estado de derecho al momento de los hechos no lo prohibía. Véase, <u>Informe de la Comisionada Especial</u>, pág. 3.

oportunidad de reaccionar al Informe de la Comisionada Especial. Examinados los hechos ante nuestra consideración, estamos en posición de resolver.

II

El Canon 18 del Código de Ética Profesional, supra, dispone, en lo pertinente, que "[e]s deber del abogado defender los intereses del cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable".[11] Es innegable que este Canon consagra un deber ineludible según el cual el abogado o abogada debe manifestar todo su conocimiento y sus destrezas en favor de la causa de su cliente.[12]

Hemos señalado que "[c]uando se infringe el Canon 18, el perjuicio directo lo padece la propia parte negligente no logrando la concreción de lo pretendido".[13] Por tal razón, la referida norma ética prescribe y enfatiza la necesidad de que los abogados empleen toda su habilidad y conocimiento de forma tal, que su actuación en la gestión a la que se comprometió, no repercuta en perjuicio de los mejores intereses de su cliente, ya sea por descuido, negligencia o dilación indebida en los trámites de su caso. Nótese, que a pesar de que este Canon menciona la labor idónea en relación al cliente, reiteradamente hemos

---

[11] 4 LPRA Ap. IX, C. 18.
[12] In re Santos Cruz, 2015 TSPR 75, 193 DPR __ (2015). Véase además, In re Cuevas Velázquez, 174 DPR 433, 442 (2008).
[13] Íd.; In re Nieves Nieves, 181 DPR 25, 37-38 (2011) (citando a R.L. Vigo, Ética del abogado: Conducta procesal indebida 103 (2da ed. 2003)).

interpretado que el mismo aplica a la labor del abogado-notario, ya que el notario, como abogado, está obligado por los Cánones del Código de Ética Profesional, supra. Por lo tanto, el Canon 18 le impide al notario actuar de forma indiferente y sin la diligencia requerida en dicho canon.[14]

Por otro lado, el Canon 19, en lo que atañe a la conducta que nos compete, dispone que "[e]l abogado debe mantener a su cliente siempre informado de todo asunto importante que surja en el desarrollo del caso que le ha sido encomendado".[15] Así, en un sinnúmero de ocasiones hemos expresado que la obligación que impone el Canon 19 "constituye un elemento imprescindible en la relación fiduciaria que caracteriza el vínculo abogado-cliente".[16] A tales efectos, hemos señalado que "constituye un deber ético independiente de la diligencia que, en virtud del Canon 18, se le exige al abogado en todo momento durante su gestión profesional".[17] Por ello, el Canon 19 impone al notario la obligación de asesorar legalmente a los otorgantes sobre las posibles consecuencias jurídicas que puede tener el negocio jurídico celebrado.[18] En consecuencia, cuando el notario no informa a los otorgantes sobre las circunstancias del otorgamiento y sus

---

[14] In re Pizarro Colón, 151 DPR 94, 105 (2000).
[15] 4 LPRA Ap. IX, C. 19.
[16] In re Santos Cruz, supra; In re Colón Morera, 172 DPR 49, 57 (2007). Véase, también, In re Muñoz Morell, 182 DPR 738, 752 (2011); In re García Muñoz, 170 DPR 780, 790 (2007); In re Criado Vázquez, 155 DPR 436, 456 (2001).
[17] In re Santos Cruz, supra.
[18] Véase, además, In re Criado Vázquez, supra, pág. 452.

efectos, el notario infringe el Canon 19 de Ética Profesional, supra.[19]

En ese contexto, en In re Pizarro Colón, 151 DPR 94 (2000) dijimos que el abogado en su función notarial está obligado a realizar "las averiguaciones mínimas que requieren las normas más elementales de la profesión [y las leyes aplicables] y que en aquellas ocasiones en que tenga duda sobre lo expresado por el otorgante, indague más allá de lo requerido comúnmente".[20] Por lo tanto, antes de autorizar una escritura, es de vital importancia que el notario conozca la realidad registral de la propiedad como principal custodio de la fe pública.[21] Ante esa responsabilidad, el notario tiene el insoslayable deber de lograr que los otorgantes concurran al acto notarial en un estado de conciencia informada.[22] Es decir, si el notario desconoce el estado registral de la propiedad sobre la cual se otorga la escritura, no podría informarles debidamente a los otorgantes de las posibles consecuencias que puedan ocurrir en el negocio jurídico. De manera que la información que proveería a los otorgantes no le constaría de propio conocimiento y correría el riesgo de que la información compartida sea incierta.[23] Por ello, aquel notario que al autorizar una escritura no demuestre la competencia y diligencia exigida en el ejercicio de la

---

[19] In re Martínez Sotomayor, 189 DPR 492, 501 (2013).
[20] In re Pizarro Colón, supra, pág. 105.
[21] Íd.
[22] Íd.
[23] In re Ortiz Gutiérrez, 153 DPR 271, 277 (2001).

notaría y que tampoco se asegure de proveer a los otorgantes la información que le conste sea cierta, viola los Cánones 18 y 19 de Ética Profesional, supra. Esto es importante ya que cuando el notario o notaria otorga un instrumento público imprime en ellos una garantía de fe pública. Por lo que al quebrantar esa dación de fe está cometiendo una falta grave en el ejercicio de la notaría.[24] Tales actuaciones constituyen una violación, no únicamente a los Cánones del Código de Ética Profesional, supra, sino también a las disposiciones de la Ley Notarial, supra, y a su Reglamento, supra. Lo que conlleva la imposición de una severa medida disciplinaria.[25]

Sobre este particular, el inciso (f) de la Ley Notarial, supra, dispone que el abogado o abogada tiene el deber de hacer todas las advertencias legales pertinentes durante el acto de otorgamiento. Por lo tanto y como mencionáramos previamente, antes de autorizar una escritura pública el notario debe conocer los antecedentes registrales de la propiedad para asegurarse que lo expresado es cierto.[26] El notario no puede simplemente ignorar el estado registral de una propiedad al momento de autorizar una escritura de segregación, por ejemplo.[27] De lo contrario, estaría dando como cierto un hecho que es incompatible con la realidad registral violando la fe

---

[24] In re Santiago Rodríguez, 2016 TSPR 43, 194 DPR __ (2016); In re Toro Imbernón, 2016 TSPR 8, 194 DPR __ (2016).
[25] Íd.
[26] In re Martínez Sotomayor, supra, pág. 500.
[27] Íd.

pública notarial que como sabemos constituye la "espina dorsal de todo el esquema de autenticidad documental notarial".[28]

En lo atinente a la conducta de la licenciada Collado Ruiz, en In re López Maldonado, 130 DPR 863 (1992), expresamos lo siguiente:

> Un abogado-notario viola la fe notarial al no hacer un estudio de título en el Registro de la Propiedad y proceder a preparar y a autorizar una escritura -dando fe de que se hace un traspaso de una finca- cuando en realidad el traspaso es de un solar segregado y aún no inscrito y no sobre la finca descrita en la escritura. También viola la fe notarial el dar fe en una escritura de que la finca está inscrita a nombre de una persona cuando de los libros del Registro de la Propiedad surge que esto no es cierto. (Énfasis nuestro).[29]

En conclusión, el notario debe asegurarse del fiel cumplimiento con lo dispuesto en el Art. 2 de la Ley Notarial, supra, so pena de que se tomen medidas disciplinarias en su contra.[30] No hacerlo sería apartarse de la conducta exigida por el Canon 35 de Ética Profesional, supra.[31] En lo pertinente, este Canon dispone que el abogado debe ajustarse a la sinceridad de los hechos al examinar los testigos, al redactar afidávit u otros documentos, y al presentar sus causas. Cónsono con lo enunciado, hemos resuelto que se infringe el referido Canon por el simple hecho de faltar a la verdad, independientemente de los motivos de la falsedad. A esos

---

[28] Íd.; In re Collazo Sánchez, 159 DPR 769, 774 (2003).
[29] In re López Maldonado, supra, pág. 866.
[30] In re Toro Imbernón, supra.
[31] In re Ojeda Martínez, 185 DPR 1068, 1075 (2012).

efectos, no es necesario que el notario haya faltado a la verdad deliberadamente o con la intención de defraudar o engañar.[32] Tampoco es necesario causar daño a un tercero. Tales manifestaciones no constituyen una defensa ante la violación ética.[33]

Finalmente, debemos puntualizar que no estamos obligados a sostener las determinaciones de hechos realizadas por un Comisionado Especial. Las mismas merecen nuestra deferencia, salvo que se demuestre pasión, prejuicio, parcialidad o error manifiesto en su apreciación de la prueba.[34] No obstante, dicha deferencia aplica cuando las determinaciones de hechos están basadas en prueba testifical, pues es cuando el Comisionado Especial se encuentra en una mejor posición para aquilatar la prueba.[35] Ahora bien, "cuando esas determinaciones estén basadas en la prueba documental que obra en el expediente, el tribunal revisor está en igual posición que el Comisionado Especial, y por ende, puede adoptar, modificar o rechazar tal informe".[36] Establecido el marco doctrinal aplicable, procedemos a determinar si la notaria incurrió en las violaciones imputadas.

## III.

Sabido es que cuando adjudicamos casos relacionados a violaciones éticas debemos tomar en consideración los

---

[32] In re Toro Imbernón, supra.
[33] Íd.
[34] In re García Ortiz, 187 DPR 507, 521 (2012); In re García Aguirre, 175 DPR 433, 442 (2009).
[35] Íd.; In re González Ortiz, 162 DPR 80, 85-86 (2004).
[36] In re García Ortiz, supra.

agravantes y atenuantes que apliquen. Así, al determinar la sanción disciplinaria que vamos a imponer a un abogado que ha incurrido en conducta impropia, debemos considerar su historial profesional.[37] Evaluamos, entre otras cosas, la reputación del abogado en la comunidad, si se trata de una primera falta, si ninguna parte ha resultado perjudicada, la aceptación de la falta y el resarcimiento al cliente.[38]

En este caso, debemos reconocer que es la primera vez que la licenciada Collado Ruiz se enfrenta a un proceso disciplinario. Además, sabemos que ésta aceptó todos sus errores, demostró estar verdaderamente arrepentida por las faltas incurridas, se responsabilizó de subsanar las deficiencias de las escrituras objeto de la controversia y se aseguró de inscribir en el Registro de la Propiedad el inmueble que la quejosa adquirió. Incluso, le entregó $8,000.00 a la quejosa para recompensar los gastos incurridos en el negocio jurídico autorizado y demostró a través de sus testigos que tiene una buena reputación en la comunidad. En síntesis, la licenciada Collado Ruiz subsanó todos sus errores y logró la transmisión del inmueble y su subsiguiente inscripción en el Registro de la Propiedad.

Ahora bien, el hecho de que un notario subsane todas las deficiencias no es suficiente para liberarlo de responsabilidad. Esto, porque la función que ejerce el

---

[37] In re Ortiz Delgado, 189 DPR 826, 832 (2013).
[38] Íd. Véase, además, In re García Ortiz, supra, pág. 521.

notario, como custodio de la fe pública, requiere que éste sea sumamente cuidadoso y que preste gran atención y esmero en las gestiones que realiza. Al respecto, hemos reafirmado "que el ejercicio del notariado exige un grado razonable de organización administrativa, supervisión, responsabilidad y consciencia pública".[39] En lo que respecta al caso ante nos, es evidente que la licenciada Collado Ruiz no empleó la atención y esmero requerido en sus funciones como notaria. Un examen del expediente refleja que la abogada autorizó alrededor de diez documentos tratando de rectificar o subsanar sus propios errores. Sin embargo, a pesar de ello, repetía las mismas faltas una y otra vez. Particularmente, la omisión de las advertencias legales, dejar de exponer información sobre los otorgantes, dejar de exponer la información necesaria de ella como notaria autorizante, la descripción incompleta e incongruente de solares, el omitir el tracto sucesivo de las cabidas, entre otras.

También, surge del expediente del caso que la letrada recibió una comunicación por parte del Bufete Carlos M. García Rullán en la que se le solicitó que aclarara numerosas interrogantes que surgían de varias escrituras autorizadas por ella. Entre las aclaraciones solicitadas están la falta de datos de inscripción de las fincas segregadas, la falta de documentos complementarios importantes para la inscripción de las correspondientes

---

[39] Íd. págs. 959-960.

escrituras en el Registro de la Propiedad, confusión con respecto a la cabida de las fincas segregadas, datos incongruentes entre la información de las escrituras y la autorización de ARPE para la segregación de fincas. En fin, un sinnúmero de errores y faltas que ponen de manifiesto la nefasta gestión notarial de la licenciada Collado Ruiz.

De otra parte, en la Primera Escritura (sobre ratificación y compraventa) la licenciada Collado Ruiz consignó que los vendedores eran dueños en pleno dominio del inmueble cuando el mismo constaba inscrito en el Registro de la Propiedad a nombre de otra persona. Esto demuestra que la letrada no verificó el historial registral del inmueble. De igual forma, la letrada tampoco consignó que el predio del cual procedía el solar 5 no constaba inscrito en el Registro de la Propiedad como finca separada de la Finca Núm. 732; no orientó adecuadamente a la quejosa sobre las consecuencias de adquirir un inmueble que aparecía inscrito en el Registro de la Propiedad a favor de otra persona. Más importante aún, no realizó las advertencias necesarias y esenciales sobre el negocio jurídico en cuestión. Además, en tres ocasiones distintas la licenciada Collado Ruiz omitió la información sobre nombre, vecindad y sitio de oficina de la notaria autorizante apartándose así de las disposiciones de la Ley Notarial, supra, y su Reglamento, supra. Tales actuaciones, en unión a todos los errores y

faltas cometidas en las escrituras públicas, demuestran una falta de diligencia por parte de la querellada en su quehacer jurídico.

Por último, en la Segunda Escritura de ratificación de segregación y compraventa no figuró información sobre declaratoria de herederos o documento alguno que acreditara quién o quiénes eran los herederos de Don Crescencio, verdadero dueño de la Finca Núm. 732. Ello, en violación a la fe pública notarial, al Art. 57 de la Ley Hipotecaria, supra; y en consecuencia, del Canon 35.

Cónsono con los hechos del caso ante nos, colegimos que la licenciada Collado Ruiz cometió las violaciones imputadas. Según reseñado, las actuaciones y omisiones de la letrada reflejan su patente indiferencia respecto sus deberes como abogada y notaria. De esa forma, la querellada violó los Cánones 18, 19 y 35 del Código de Ética Profesional, supra. En conclusión, se apartó de los deberes exigidos en la Ley Notarial, supra, la Ley Hipotecaria, supra, y los Cánones de Ética Profesional, supra.

IV.

Por los fundamentos que anteceden, decretamos la suspensión inmediata de la Lcda. Carmen Collado Ruiz de la práctica de la notaría por el término de tres (3) meses.

La Oficina de Alguacil de este Tribunal procederá de inmediato, a incautar la obra protocolar y sello notarial de la licenciada Collado Ruiz y entregará a la Oficina de

Inspección de Notarías para la investigación e informe correspondiente.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re: Carmen del R. Collado Ruiz          CP-2013-8

SENTENCIA

En San Juan, Puerto Rico, a 10 de junio de 2016.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte de la presente Sentencia, decretamos la suspensión inmediata de la Lcda. Carmen del R. Collado Ruiz de la práctica de la notaría por el término de tres (3) meses.

La Oficina de Alguacil de este Tribunal procederá, de inmediato, a incautar la obra protocolar y sello notarial de la licenciada Collado Ruiz y entregará a la Oficina de Inspección de Notarías para la investigación e informe correspondiente.

Notifíquese personalmente esta Opinión *Per Curiam* a la licenciada Collado Ruiz por la Oficina del Alguacil de este Tribunal.

Lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo.

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo