EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | |
|--------|--------|
| Efraín Torres Rivera | 2020 TSPR 23 |
| | 204 DPR _____ |

Número del Caso:  AB-2019-4
                  (TS-5409)


Fecha:  25 de febrero de 2020


Abogado del promovido:

     Por derecho propio



Oficina de Inspección de Notarías:

     Lcdo. Manuel E. Ávila De Jesús




Materia:  La suspensión será efectiva el 4 de marzo de 2020, fecha en que se le notificó al abogado de su suspensión inmediata.



Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |  |
|---|---|---|
| *In re* <br><br> Efraín Torres Rivera <br> (TS-5409) | **Núm.** AB-2019-0004 |  |

*PER CURIAM*

San Juan, Puerto Rico, a 25 de febrero de 2020.

En esta ocasión, nos corresponde ejercer nuestra jurisdicción disciplinaria y suspender a un integrante de la profesión legal de la práctica de la notaría por un término de tres (3) meses por infringir el Artículo 2 de la Ley Notarial de Puerto Rico, 4 LPRA sec. 2002, así como el Canon 18 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 18.

## I.

El Lcdo. Efraín Torres Rivera fue admitido al ejercicio de la abogacía el 29 de diciembre de 1976 y al ejercicio de la notaría el 28 de febrero de 1977. La acción disciplinaria que nos ocupa se suscita a partir de la queja presentada el 11 de enero de 2019 por el matrimonio compuesto por el Sr. José R. Marcos Zorrilla y la Sra. Daisy Ortiz Burgos (en conjunto, matrimonio Marcos-Ortiz).

## A.

El 21 de diciembre de 2005, el licenciado Torres Rivera autorizó la Escritura Número 147 sobre *"Acta de edificación, partición, cesión de derechos y acciones hereditarias y compraventa"* (Escritura Núm. 147). Al

otorgamiento de esta escritura ante el licenciado Torres Rivera comparecieron como la parte vendedora o cedente de una finca localizada en Orocovis el Sr. José B. Berdecía Ortiz y la Sra. Betzaida Berdecía Ortiz, así como la Sra. Aida Ortiz Hernández (integrantes de la Sucesión y viuda del Sr. José Dolores Berdecía Torres, respectivamente).[1] Éstos, alegadamente, poseían la finca en carácter de dueños en pleno dominio. Por su parte, el matrimonio Marcos-Ortiz compareció como la parte compradora.

El predio de terreno sobre el cual versaba el negocio jurídico consignado en la Escritura Núm. 147 constaba descrito como uno compuesto de dos mil metros cuadrados (2,000 mc) en donde ubicaban una residencia, a la cual se le adjudicó un valor de cuarenta mil dólares ($40,000.00) y otra estructura destinada a residencia y comercio, cuyo valor se estipuló en ciento diez mil dólares ($110,000.00). El precio convenido de la compraventa fue de ciento sesenta mil dólares ($160,000.00). En adición al valor de las estructuras sitas en el predio, el precio incluía una partida de diez mil dólares ($10,000.00) por concepto de la cesión de derechos y acciones que en su momento se adjudicaran al causante de la parte vendedora en la finca

---

[1] Según se desprende de la Escritura Núm. 147, el Sr. José Berdecía Torres falleció en Orocovis, Puerto Rico, el 19 de noviembre de 2004 y la correspondiente declaratoria de herederos fue dictada el 16 de marzo de 2005 por el Tribunal de Primera Instancia, Sala de Orocovis, en el Caso Civil Núm. B4CI-2005-00080.

de mayor cabida.[2] Ello, pues la finca objeto de la compraventa formaba parte del caudal relicto de la comunidad hereditaria del Sr. José Dolores Berdecía Torres (padre y causante del fallecido Sr. Jose Berdecía Torres), la cual no había sido objeto de partición ni adjudicación alguna.

Con relación a lo anterior, surge de la Escritura Núm. 147 que el predio objeto de la compraventa formaba parte de una finca de mayor cabida, la cual consta en el Registro de la Propiedad como la Finca Núm. 1,776, inscrita al Folio 242 y Tomo 32 de Orocovis, Registro de la Propiedad de Barranquitas, con una cabida de siete cuerdas con setenta y cinco céntimos de otra (7.75 c.). En la referida escritura, el licenciado Torres Rivera hizo constar que la finca de mayor cabida "pertenece a la sucesión de Don José Dolores Berdecía Torres sobre la cual no se ha hecho declaratoria de herederos, partición o adjudicación forma[l] pero extrajudicialmente se han ocupado varios predios y se han construido en él estructuras dedicadas a vivienda y negocio por otros herederos". Éste indicó, además, que el Sr. José Berdecía Torres y su esposa la Sra. Aida Ortiz Hernández entraron en posesión del predio de dos mil metros cuadrados (2,000 mc), objeto de la Escritura Núm. 147, y construyeron la estructura destinada a

---

[2] Con antelación al otorgamiento de la Escritura Núm. 147, la parte compradora pagó la suma de veinticinco mil dólares ($25,000.00) a la parte vendedora como adelanto del precio de la compraventa.

residencia y comercio. Del mismo modo, explicó que un tiempo después, la Sra. Betzaida Berdecía Ortiz, hija de éstos, construyó la otra estructura en la misma porción del terreno.

En el acápite de las advertencias legales de la Escritura Núm. 147, el licenciado Torres Rivera prescribió diversas reservas de carácter general referentes al negocio jurídico pactado y detalló las siguientes:

> ----UNA: Los comparecientes han sido advertidos por el Notario autorizante de que se les ha explicado el contenido de la Ley 194 del 7 de agosto de 1998 que adiciona el Inciso G al Artículo 15 de la Ley Notarial de Puerto Rico y el tercer párrafo del Artículo 56 de dicha Ley así como también el contenido de la Ley 75 del 2 de julio de 1987 a los efectos de que en primer lugar se deberá consignar este negocio en Escritura Pública cuando se termine la condición suspensiva; de que se les ha explicado la existencia de una comunidad de bienes al amparo de los Artículos 326 al 340 del Código Civil, 31 LPRA, Sección 1271 a 1285; que además **no se podrá establecer segregación, lotificación o de algún modo identificación de la participación o participaciones sobre el terreno sin los correspondientes permisos** de la Junta de Planificación, la Administración de Reglamentos y Permisos o la Agencia correspondiente; que la participación adquirida por compradores es abstracta e indefinida; que **cualquier arreglo, convenio o pacto para segregar, lotificar, marcar o identificar la participación será nulo o ineficaz** y que el mismo podría constituir delito grave si no existe el correspondiente permiso de la agencia reguladora y la aceptación expresa del comprador de que adquiere en capacidad de comunero y que a pesar de que se le ha explicado todo lo anterior los comparecientes de la segunda parte tiene[n] el interés en adquirir y suscribir este contrato. (Énfasis suplido)

> ----DOS: Se les ha explicado y advertido a los compradores que por tal razón **esta escritura no puede ser inscrita en el Registro de la Propiedad** hasta tanto se haga una partición de bienes de los causantes del difunto Don José Berdecía

Torres […] o un tribunal ordene su inscripción. (Énfasis suplido)

*Escritura Núm. 147 del 21 de diciembre de 2005.*

Posteriormente, el 28 de enero de 2006, el matrimonio Marcos-Ortiz expidió un *Pagaré*, ante el licenciado Torres Rivera, a favor de la Sra. Aida Ortiz Hernández -de manera exclusiva- por la suma de ciento treinta y cinco mil dólares ($135,000.00) por concepto del balance adeudado por la compraventa, y por otras consideraciones, tales como unos bienes muebles.

Luego de varios pleitos legales entre las partes[3], el 17 de marzo de 2017, el Sr. José B. Berdecía Ortiz y la Sra. Betzaida Berdecía Ortiz incoaron una *Demanda Enmendada de nulidad de escritura de compraventa* en contra de la Sucesión de José Dolores Berdecía Torres (compuesta por, al menos, 12 herederos, la mayoría fallecidos, y sus herederos de paradero desconocido). En dicha demanda, también figuraron como demandados el matrimonio Marcos-Ortiz y la Sra. Aida Ortiz Hernández. La reclamación se presentó porque el precio de venta del terreno no había sido satisfecho, aun cuando el matrimonio Marcos-Ortiz había tomado posesión de éste.

El 24 de julio de 2018, el Tribunal de Primera Instancia, Sala de Orocovis, emitió una *Sentencia* mediante

---

[3] Entre éstos se destaca una demanda de cobro de dinero instada por la Sra. Aida Ortiz Hernández en contra del matrimonio Marcos-Ortiz por incumplimiento con el pago de la obligación económica estipulada en el Pagaré expedido el 28 de enero de 2006, cuya fecha de vencimiento se había pautado para el 11 de enero de 2013.

la cual determinó que la transacción pactada en la Escritura Núm. 147 era radicalmente nula, por lo que no surtió efectos jurídicos y correspondía la devolución de las contraprestaciones. En consecuencia, el foro primario ordenó la devolución del inmueble y el desalojo del matrimonio Marcos-Ortiz. A estos efectos, el tribunal de instancia emitió una *Orden*, el 11 de octubre de 2018, por vía de la cual decretó el lanzamiento de los residentes de una de las estructuras sitas en el predio en controversia.

En vista de lo dispuesto en la *Sentencia* antes mencionada, el matrimonio Marcos-Ortiz instó una queja ante este Tribunal. En dicha queja alegó que la Escritura Núm. 147 constituyó un "documento confuso, defectuoso" en el cual el licenciado Torres Rivera incorporó varios negocios jurídicos incompatibles que se apartaban de las normas legales aplicables al traspaso de bienes inmuebles, lo que los obligó a desalojar la propiedad que fuera su hogar por más de trece (13) años. Adicionalmente, éstos le imputaron al licenciado Torres Rivera tener conocimiento de que la propiedad sobre la cual versaba el documento público en cuestión no pertenecía a la parte vendedora. El matrimonio Marcos-Ortiz declaró que el licenciado Torres Rivera redactó las advertencias legales de la Escritura Núm. 147 con el propósito de evadir su responsabilidad como notario autorizante, pues éste conocía que el negocio jurídico allí acordado no era posible en nuestro ordenamiento.

Así las cosas, el 28 de enero de 2019, el licenciado Torres Rivera compareció ante este Foro mediante una *Contestación a Queja contra Abogado*. En síntesis, aceptó que autorizó la Escritura Núm. 147 en la cual el matrimonio Marcos-Ortiz compareció como la parte compradora de un predio donde ubicaban dos estructuras y cuyos vendedores poseían en carácter de dueños, el cual formaba parte de una finca de mayor cabida. El licenciado Torres Rivera argumentó que, según la información recopilada, las estructuras sitas en el predio habían sido ocupadas por los vendedores, al menos, desde el 10 de agosto de 1990 y que se esperaba que ese tiempo fuera acreditado a la posesión del terreno y las estructuras en controversia por parte del matrimonio Marcos-Ortiz. Ello, con la intención de que llegado el año 2020, éstos pudieran solicitar un expediente de dominio contradictorio frente a los dueños registrales o sus sucesores con interés.

El licenciado Torres Rivera alegó que le explicó al matrimonio Marcos-Ortiz los principios de la posesión en concepto de dueño y que éstos afirmaron haber entendido su alcance. Añadió que el Sr. José R. Marcos Zorrilla y la Sra. Daisy Ortiz Burgos presuntamente no cumplieron con sus obligaciones de pago, lo que desató el pleito en el cual se decretó la nulidad de la Escritura Núm. 147. Por último, el licenciado Torres Rivera afirmó que vender y/o ceder las participaciones en una finca perteneciente a una comunidad hereditaria, con relación a un predio que ha sido adjudicado

extrajudicialmente por los herederos, es una práctica común en las zonas rurales del país. A estos efectos, el licenciado Torres Rivera adjuntó a su moción unas cinco (5) escrituras que fueron autorizadas por diversos notarios mediante las cuales otros herederos del dueño registral de la finca, el Sr. José Dolores Berdecía Torres, cedieron sus derechos y acciones particulares en el terreno en cuestión. Éstas datan del periodo comprendido entre los años 1983 al 1995.[4]

El 23 de abril de 2019, referimos el asunto a la Oficina de Inspección de Notarías (ODIN). Posteriormente, la ODIN emitió su *Informe* el 9 de julio de 2019, para la consideración de este Tribunal. En dicho informe, se reseñaron los hechos materiales y se determinó que, en efecto, la conducta del licenciado Torres Rivera fue constitutiva de violaciones al Código de Ética Profesional,

---

[4] Es menester destacar que la mayoría de esas escrituras versaban sobre la cesión de derechos hereditarios sobre la totalidad del caudal relicto. Sólo una de las escrituras anejadas procuraba disponer de un predio de terreno que no había sido segregado de la finca de mayor cabida, que es lo que ocurrió en el caso de autos.
Curiosamente, una de las escrituras fue autorizada por el notario de referencia. Mediante ésta, el Sr. Dolores Berdecía Repollet, hijo del Sr. José Dolores Berdecía Torres, cedió todos los derechos y acciones que "en abstracto t[enía] sobre la descrita propiedad como su participación hereditaria en los bienes de su padre". *Anejo 6, Contestación a Queja contra Abogado*. Asimismo, la Sra. María Castellano Ramos, esposa de ese heredero compareció a dicha escritura para ceder "cualquier derecho y acción que ella pu[diera] tener en la edificación levantada por parte de la Sociedad Legal de Gananciales en la finca de la Sucesión antes reseñada". *Id.*

4 LPRA Ap. IX, y preceptos de la Ley Notarial de Puerto Rico, 4 LPRA sec. 2001 *et seq.*

En lo relacionado al cumplimiento con la Ley Notarial de Puerto Rico, el Informe de ODIN determinó que el licenciado Torres Rivera infringió el Artículo 2 del referido estatuto. 4 LPRA sec. 2002. Ello, puesto que éste quebrantó la fe pública notarial al autorizar un instrumento radicalmente nulo, por lo que no empleó la competencia esperada de un notario ante los asuntos que se le encomiendan.

De igual modo, se indicó que el letrado violó el Canon 18 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 18. Esto dado que el licenciado Torres Rivera faltó a los postulados de la fe pública notarial y los requisitos impuestos por la normativa aplicable, por lo que infringió dicho canon al contravenir el deber de diligencia y competencia. A saber, el licenciado Torres Rivera autorizó una escritura que procuraba segregar, lotificar o identificar de algún modo una participación sobre un terreno perteneciente a una comunidad hereditaria -que no había sido objeto de partición- sin que los integrantes de la comunidad consintieran unánimemente a dicho negocio jurídico. Conforme a lo anterior, la ODIN recomendó a este Tribunal la suspensión del licenciado Torres Rivera del ejercicio de la notaría por un periodo de tres (3) meses.

En atención a esto, el 16 de agosto de 2019, mediante una *Resolución*, le concedimos al licenciado Torres Rivera

un término de veinte (20) días para que se expresara sobre el Informe que presentó la ODIN. En su comparecencia, por medio de una *Moción informando la posición del promovido a Informe de la ODIN*, el licenciado Torres Rivera resaltó que el matrimonio Marcos-Ortiz no expresó en su queja que todas las partes involucradas en el otorgamiento de la Escritura Núm. 147 habían pactado con anticipación aspectos significativos del negocio jurídico que éste autorizaría. En lo concerniente a lo esbozado por la ODIN en su *Informe*, el licenciado Torres Rivera manifestó que todas las conclusiones de dicha Oficina eran correctas, por lo que aceptó su responsabilidad por las deficiencias de la Escritura Núm. 147 y expresó su arrepentimiento ante lo acontecido.

El 18 de septiembre de 2019, compareció el matrimonio Marcos-Ortiz, por derecho propio, mediante una *Oposición a moción del promovido a informe de la ODIN*. En lo pertinente, expusieron que el licenciado Torres Rivera no demostró justificación para sus faltas éticas y violaciones a la Ley Notarial de Puerto Rico.

Evaluado el Informe de la ODIN, las determinaciones de hecho contenidas en éste, así como los documentos que constan en el expediente, procedemos a evaluar la conducta del licenciado Torres Rivera a la luz del Canon 18 del Código de Ética Profesional, *supra*, y lo dispuesto en el Artículo 2 de la Ley Notarial de Puerto Rico, *supra*.

## II.

### A.

Nuestro ordenamiento jurídico le confiere al notario la autoridad de "dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales". 4 LPRA sec. 2002. De esta forma, su función estriba, esencialmente, en recibir e interpretar la voluntad de los otorgantes con el fin de concederle forma y autoridad legal a ésta. *Id.* La fe pública notarial es el "elemento objetivo que se concreta a través de la persona del notario con la presencia del compareciente" por lo que constituye la "espina dorsal de todo el esquema de autenticidad documental". *In re González González*, 119 DPR 496, 499 (1988). Así, la fe pública notarial reviste de certeza los negocios jurídicos que bajo ésta se suscriben.

Ante tal consideración, el notario tiene el deber encomiable de obrar como custodio de la fe pública notarial y ser en extremo cauteloso al ejercer su práctica profesional. *In re Muñoz Fernós*, 184 DPR 679 (2012). Debido al rol esencial que ejerce la función notarial en el tráfico jurídico, se requiere de los notarios un estricto cumplimiento con la Ley Notarial de Puerto Rico, el Código de Ética Profesional y toda la demás normativa sustantiva que rige los diversos negocios jurídicos que éstos instrumentan al interpretar la voluntad de los otorgantes.

*In re Márquez Colón*, 198 DPR 509, 518 (2017); *In re Morales Maldonado*, 193 DPR 340 (2015).

Esto, pues, el notario representa tanto la fe pública como la ley para todas las partes que comparecen ante él. Así, los notarios se inmiscuyen inevitablemente en las transacciones que adquieren eficacia jurídica ante sí. Por consiguiente, el deber de estos funcionarios rebasa el ejercicio automático de legalizar las firmas de los otorgantes. *In re García Cabrera*, 201 DPR 902 (2019). De conformidad con esto, hemos reiterado enfáticamente que el notario tiene la obligación indelegable de ofrecer asesoramiento legal a los otorgantes sobre las circunstancias del otorgamiento, así como las posibles consecuencias jurídicas que puede entrañar el negocio jurídico celebrado. *In re Collado Ruiz*, 195 DPR 705, 713 (2016).

En resumen, el notario es una figura bifronte; por un lado, ejerce una función pública; por otro es un profesional de Derecho con una clara misión asesora y de consejo. En su función pública da fe -conforme a las leyes- de los contratos y demás actos extrajudiciales, y como profesional de Derecho, asesora y aconseja sobre "los medios jurídicos más adecuados para el logro de los fines lícitos que los particulares se proponen alcanzar." Rafael Gómez Pérez, *Deontología Jurídica*, EUNSA, 199, pág. 109. Por lo que se afirma que el notario es modelador de actos y negocios jurídicos, y por tanto "es el asesor jurídico en el

cumplimiento pacífico del derecho." *Id.* En tal sentido, cuando -a su juicio- el acto o negocio jurídico que va a autorizar sea contrario a las leyes, a los postulados éticos o a la moral, deberá negarse a dar fe de tal acto.

Al incumplir con la referida obligación, el notario se expone a sanciones disciplinarias por violar la fe pública notarial instituida en el Artículo 2 de la Ley Notarial de Puerto Rico, *supra*.

**B.**

El Código de Ética Profesional le exige al abogado el desfile de la "mayor y más excelsa competencia, responsabilidad e integridad" al emprender como jurista, por lo que obrar en contrario a estos principios es incompatible con el ejercicio de la abogacía y la notaría. Preámbulo, 4 LPRA Ap. IX. Véase *In re Cuevas Vázquez*, 174 DPR 433 (2008).

Asimismo, el Canon 18 del Código de Ética Profesional, *supra*, dispone que "[e]s deber del abogado defender los intereses del cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable". En el interés de esto, este canon ostenta una modalidad distinta cuando se emplea la función notarial. *In re González Acevedo*, 197 DPR 360, 366 (2017). La naturaleza de las funciones del notario hace insoslayable que éste ejerza la notaría con un deber mayor de diligencia y competencia. *Id.* Véase, además, *In re*

*Portela Martínez*, 191 DPR 84, 90 (2014); *In re Colón Ramery*, 138 DPR 793, 799 (1995). Así, el notario está compelido a rendir una labor idónea, que responda a la altura de las exigencias que acarrea su función como guardián de la fe pública. Faltar a dicho deber constituye una acometida contra la fe pública notarial investida en éste.

Es por tal razón que, según enfatizamos, el notario tiene la obligación de asesorar oportunamente a todas las partes que intervengan en el otorgamiento de un documento público. Esto incluye ofrecer a los otorgantes las instrucciones, explicaciones y advertencias necesarias para que concurran al acto debidamente informados. *In re Torres Alicea*, 175 DPR 456 (2009); *In re Martínez Almodóvar*, 180 DPR 805 (2011). Es importante destacar que el deber de diligencia que es requerido por el Canon 18 del Código de Ética Profesional, *supra*, deriva del deber de competencia que exige el buen desempeño de la profesión. *In re García Ortiz*, 187 DPR 507, 518 (2012) (citando a S. Steidel Figueroa, *Ética y responsabilidad disciplinaria del abogado*, San Juan, Pubs. JTS, 2010, pág. 188). Dicho de otro modo, el notario debe demostrar que posee los conocimientos jurídicos necesarios para ejecutar sus funciones. *Id.*

Desde luego, como hemos expresado previamente, un notario que desconoce las normas jurídicas relativas a los negocios que ante éste se otorgan, atenta contra el carácter propio del notariado e infringe el Canon 18 del Código de

Ética Profesional. *In re González Acevedo*, 197 DPR en la pág. 366; *In re Maldonado Maldonado*, 197 DPR 802, 813 (2017); *In re Vargas Velázquez*, 190 DPR 730 (2014); *In re Ortiz Medina*, 175 DPR 43 (2008).

## c.

Es norma reiterada que en una comunidad hereditaria los coherederos poseen la titularidad de una cuota alícuota o abstracta, y no sobre algún bien en particular que obre en el caudal relicto. *Kogan v. Registrador*, 125 DPR 636, 652 (1990). Es decir, hasta tanto se lleve a cabo la partición y adjudicación de la herencia, cada heredero tiene, solamente, un derecho en el complejo hereditario. *Id.* Como resultado, un coheredero puede ceder o enajenar sus derechos y acciones sobre su participación abstracta en la totalidad del caudal hereditario, no así sobre algún bien particular de los que componen el caudal. *Vega Montoya v. Registrador*, 179 DPR 80 (2010).

Empero, como este Foro ha reseñado anteriormente, es posible enajenar bienes concretos de una comunidad hereditaria previo a la partición. Ahora bien, es prudente advertir que para ello resulta imprescindible que concurran todos los integrantes que forman parte de la sucesión a otorgar el negocio jurídico. *Gierbolini Colón v. Miranda Colón,* 151 DPR 315, 321 (2000); *Kogan v. Registrador*, 125 DPR en la pág. 652. Consecuentemente, ante la ausencia de algún integrante de la sucesión, un notario está imposibilitado de autorizar escrituras en las que se cedan

o enajenen derechos de una porción específica sobre un bien perteneciente a una comunidad hereditaria y tienen la obligación de asesorar a los otorgantes sobre tal prohibición.

## III.

Al examinar las actuaciones del licenciado Torres Rivera a tenor de las disposiciones éticas y sustantivas discutidas, es forzoso concluir que su conducta representa infracciones al Canon 18 del Código de Ética Profesional y al Artículo 2 de la Ley Notarial de Puerto Rico.

En el caso de autos, el licenciado Torres Rivera autorizó una escritura mediante la cual se dispuso la venta de unas estructuras y un predio de terreno, así como la cesión de derechos y acciones hereditarias sobre una finca que pertenecía a una comunidad hereditaria que no había sido liquidada. Al otorgamiento de dicha escritura no comparecieron todos los integrantes de la sucesión -sobre la cual no se había hecho una declaratoria de herederos- sino los herederos que ocupaban el predio de terreno que se pretendía fuera objeto de venta. Ese predio de terreno tampoco había sido segregado de la finca principal conforme a derecho.

Como se adelantó, en el caso que origina la queja ante el licenciado Torres Rivera, el instrumento público que éste otorgó fue declarado radicalmente nulo por el Tribunal de Primera Instancia justamente por razón de la ausencia de algunos integrantes de una comunidad hereditaria.

Específicamente, al otorgamiento de la escritura no comparecieron todos los integrantes de la Sucesión del Sr. José Dolores Berdecía Torres, dueña en común proindiviso de la Finca Núm. 1,776 sita en Orocovis, a brindar su consentimiento unánime para la venta de un bien específico de la herencia. La Sucesión del Sr. José Berdecía Torres no podía enajenar los dos mil metros cuadrados (2,000 mc) que ocupaba, puesto que la titularidad de la Finca correspondía a la comunidad hereditaria a la que su fenecido padre pertenecía. En otras palabras, la enajenación no podía realizarse de manera exclusiva por la sucesión de uno de sus integrantes que solamente ostentaba una cuota alícuota sobre la totalidad del caudal original.

De otra parte, la porción de terreno que la Sucesión del Sr. José Berdecía Torres ocupaba en carácter de dueño no había sido segregada a tenor de la reglamentación aplicable, lo cual el licenciado Torres Rivera conocía. No obstante, éste autorizó la Escritura Núm. 147 mediante la cual se pretendía segregar o lotificar *de facto* el predio de terreno. De esta manera, se prescindió de los permisos de las agencias concernidas, actuación contraria a la legislación vigente que tornó el negocio jurídico en uno nulo e ineficaz. Esto, aun cuando el propio licenciado Torres Rivera había advertido a los otorgantes que no se podría establecer la segregación, lotificación o de algún modo identificación de la participación sobre el terreno sin los correspondientes permisos. Aún más, el licenciado

Torres Rivera alertó a los otorgantes que "cualquier arreglo, convenio o pacto para segregar, lotificar, marcar o identificar la participación sería nulo o ineficaz". *Escritura Núm. 147 del 21 de diciembre de 2005*.

Resulta en un contrasentido, entonces, que el propio instrumento que se sirve de la segregación *de facto* para delimitar la participación de la Sucesión del Sr. José Berdecía Torres en la finca perteneciente a la comunidad hereditaria de la Sucesión del Sr. José Dolores Berdecía Torres advierta sobre la ilegalidad de dicho acto. De modo similar, el notario autorizante apercibió a los otorgantes de la imposibilidad de que la Escritura Núm. 147 fuera inscrita en el Registro de la Propiedad.

De las advertencias legales consignadas en la Escritura Núm. 147, se puede colegir que el licenciado Torres Rivera conocía que la misma no surtiría ningún efecto jurídico -en claro detrimento de la parte compradora- por lo que, al autorizarla, éste vulneró la fe pública notarial en él depositada.[5] Sobre las advertencias que deben ser consignadas en las escrituras públicas, hemos expresado que constituye uno de los deberes principales de todo notario "darles a los otorgantes las informaciones, aclaraciones y advertencias necesarias para que comprendan el sentido, así

---

[5] Cabe mencionar que las reservas legales que el licenciado Torres Rivera plasmó en la escritura en controversia son las advertencias pertinentes en los negocios de compraventa de terrenos en común pro indiviso, de conformidad con el Artículo 15(g) de la Ley Notarial de Puerto Rico, 4 LPRA sec. 2033(g), no así las exigidas en la cesión de derechos hereditarios.

como los efectos y consecuencias del negocio, y se den cuenta de los riesgos que corren en celebrarlo". *In re Toro González II*, 198 DPR 877, 888 (2015); *In re Davidson Lampón*, 159 DPR 448 (2003). Véase *Chévere v. Cátala*, 115 DPR 432 (1984).

En este caso, el licenciado Torres Rivera incorporó al documento, y alegadamente explicó a los otorgantes, gran parte de las advertencias pertinentes al negocio que éstos habían acordado. Entre estas reservas, indicó la imposibilidad de que lo convenido en la escritura alcanzara eficacia jurídica y se inscribiera en el Registro de la Propiedad. Sin embargo, establecer las advertencias correspondientes en la escritura no puede servir como subterfugio para autorizar transacciones jurídicas que no tienen cabida en nuestro ordenamiento.

La observancia de la obligación de ofrecer las advertencias necesarias no exime al notario de ejercer el deber primordial de salvaguardar la fe pública notarial y cumplir con el propósito elemental de su gestión profesional: otorgar instrumentos jurídicamente eficaces y legales. *In re Salas David,* 145 DPR 539, 545 (1998). Del mismo modo, obrar conforme la voluntad de las partes no subsana las deficiencias sustantivas ni reviste de validez un negocio jurídico nulo. *In re Belén Trujillo*, 184 DPR 793, 805 (2012). A fin de cuentas, el licenciado Torres Rivera autorizó el instrumento con pleno conocimiento de que el mismo no cumplía con los requisitos indispensables

para su legitimidad cuando lo apropiado era posponer el otorgamiento de éste hasta que la segregación fuera realizada según ordenado por la normativa aplicable.

Conforme a lo expuesto, el licenciado Torres Rivera no actuó con la competencia, pericia y esmero esperado de un profesional que ejerce la notaría al autorizar un instrumento público radicalmente nulo. Al así proceder, actuó en contravención de los postulados de la fe pública notarial y los requisitos que impone la legislación aplicable, por lo que incurrió en violaciones al Artículo 2 de la Ley Notarial de Puerto Rico, *supra*, así como al Canon 18 del Código de Ética Profesional, *supra*.

## IV.

Al ejercer su jurisdicción disciplinaria, este Tribunal ha expresado que es menester realizar una evaluación del historial de conducta del abogado para determinar la sanción disciplinaria que se le impondrá a éste. Dicho análisis debe ponderar diversos factores, tales como: "si goza de buena reputación, si aceptó la falta, su sincero arrepentimiento, si realizó la conducta impropia con ánimo de lucro y cualquier otro factor pertinente". *In re Portela Martínez*, 191 DPR en la pág. 93; Véase, también, *In re González Acevedo*, 197 DPR en la pág. 368.

A la luz de la totalidad de los documentos que obran en el expediente de la queja ante nuestra consideración, vale mencionar algunas circunstancias atenuantes que deben ser consideradas al momento de imponer una sanción

disciplinaria en el presente caso. Según surge del expediente del licenciado Torres Rivera y de la *Moción informando la posición del promovido a Informe de la ODIN* presentada por éste, ésta es la primera queja que se presenta en su contra. Asimismo, se desprende del Informe presentado por la ODIN que ésta es la primera infracción imputada al licenciado Torres Rivera en los más de cuarenta (40) años en los que lleva desempeñándose como notario en nuestra jurisdicción. De otra parte, el licenciado Torres Rivera expresó que ha laborado prestando servicios para Pro-Bono, Inc., así como para la Corporación de Servicios Legales de Puerto Rico, desde sus comienzos en la profesión. Asimismo, éste aceptó su falta y expresó su arrepentimiento.

## V.

En atención a lo antes expuesto, determinamos que el Lcdo. Efraín Torres Rivera violó el Canon 18 del Código de Ética Profesional, *supra*, así como lo dispuesto en el Artículo 2 de la Ley Notarial de Puerto Rico, *supra*. Evaluados los hechos acaecidos en la queja de epígrafe y el expediente personal del licenciado Torres Rivera a la luz de los factores que guían la imposición de sanciones disciplinarias a los miembros de la profesión legal, decretamos su suspensión inmediata del ejercicio de la notaría por un término de tres (3) meses. A tenor de lo anterior, se le notifica al licenciado Torres Rivera que su fianza notarial queda automáticamente cancelada. La fianza

se considerará buena y válida por tres (3) años después de su terminación en cuanto a actos realizados durante el periodo en que estuvo vigente. Se ordena a la Oficina del Alguacil de este Tribunal incautar la obra protocolar y el sello notarial del licenciado Torres Rivera y entregarlos al Director de la Oficina de Inspección de Notarías para su examen e informe correspondiente.

Notifíquese personalmente esta Opinión *Per Curiam* y Sentencia al licenciado Torres Rivera a través de la oficina del Alguacil de este Tribunal.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| *In re* | |
| Efraín Torres Rivera (TS-5409) | **Núm.** AB-2019-0004 |

SENTENCIA

San Juan, Puerto Rico, a 25 de febrero de 2020

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, se ordena la suspensión inmediata del ejercicio de la notaría del Lcdo. Efraín Torres Rivera por un término de tres (3) meses. A tenor de lo anterior, se le notifica al licenciado Torres Rivera que su fianza notarial queda automáticamente cancelada. La fianza se considerará buena y válida por tres (3) años después de su terminación en cuanto a actos realizados durante el periodo en que estuvo vigente. Se ordena a la Oficina del Alguacil de este Tribunal incautar la obra protocolar y el sello notarial del licenciado Torres Rivera y entregarlos al Director de la Oficina de Inspección de Notarías para su examen e informe correspondiente.

Notifíquese personalmente esta Opinión *Per Curiam* y Sentencia al licenciado Torres Rivera a través de la oficina del Alguacil de este Tribunal.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo